CHARLES C. EVERETT and others, in equity, vs. JOSEPH CARR.

*Will—construction of.*

A bequest commencing—" First of all, I give," etc., followed by others commencing successively with the word " next," does not take precedence of the succeeding ones.

A testator bequeathed to Emmeline Thomas, " during her natural life, the sum of $5,000 to purchase a homestead, house, or place, where she with her sisters, father and mother, if she so elects to live, may reside during her natural life; " and concluded the item as follows: " Having assigned to Emmeline, Mary, and Anna Thomas, or one of them, a policy of insurance on my life, the money collected therefrom will constitute a fund for the purchase of homestead, etc., and must be so considered as so much in payment of bequest to Emmeline, Mary, and Anna." After the testator's decease, Emmeline and her sisters received $7,500 on the policy. *Held*, That the sum received must be deducted from the legacies to them.

A bequest—" I also give and order paid to " a legatee named, " the sum of $1,000 per annum so long as she may live, for her use for charitable objects and purposes," is valid; and when once paid by the executors, their responsibility in relation thereto has ceased.

When the amount of a legacy is left blank in the will, the bequest is void.

The clause—" to my present attendant physician, to aid in the education of his children," can apply to the physician only who was attendant at the date of the will.

After making a bequest to a man and his wife specifically named, the will continued,—" This, together with the sale of the dwelling-house, will yield support, nothing more; but I give and bequeath to him and her a further sum of $2,500 for them to use for charitable purposes, not debarring them from its use, or such part as they choose to use, should they actually need it for their own comfort,—to be left by will for charitable purposes, at their decease, if not used for charitable purposes while living," *Held*, That the bequest of the $2,500 was valid, and that the disposition of it was entirely subject to their control.

A bequest to certain masonic lodges named of a specific sum " for charitable pur-
poses," is valid, when such lodges are incorporated and authorized by their
charter to take and hold for charitable and benevolent uses real and personal
estate to an amount exceeding that of the legacy.

A bequest of certain specific sums to several persons named " in trust, to be used
purely and solely for charitable purposes,—for the greatest relief of human
suffering, human wants, and for the good of the greatest number," is a valid
bequest for charitable uses.

After giving certain specific sums to three masonic lodges " for charitable pur-
poses," and certain other specific sums to certain individuals named, " to be
used purely and solely for charitable purposes," the will continued,—" but no
part of these sums donated for charitable purposes to be given till provision
be made for such as I had previously made," *Held,* That " these sums donated
for charitable purposes," refer to those bequests immediately preceding.

BILL IN EQUITY brought under R. S. c. 77, § 5, clause VII, to
determine the construction of the last will and testament of Rufus
Dwinel, late of Bangor, deceased.

The bill is in the name of all the persons who can be interested
in the provisions of the will or in the estate of the deceased, as ex-
ecutors, trustees, legatees, annuitants, and other beneficiaries, or as
next of kin, except the respondent, who is named as legatee
therein.

The bill alleges that the controversies which have arisen are in-
volved in the following propositions :

" 1. Do the bequests to Emmeline Thomas and her sisters (out-
side of the life-insurance policy and specific bequests of property)
take precedence of the other bequests in the order in which they
are named ?

" 2. After the said testate's decease, the said Emmeline and sis-
ters received upon the policy of insurance described in said will as
' assigned to one or all of them,' the sum of seventy-five hundred
dollars. Can they hold the same and be also entitled to full allow-
ance of all provisions and bequests without credit or deduction for
said proceeds from said policy.

" 3. Is the bequest to Emmeline Thomas to be used for charita-
ble purposes valid or void ? If valid, have the executors any duty
to perform as to the mode of expending the same, or are they ex-
cused from responsibility by payment to the legatee.

Everett *v.* Carr.

" 4. Can any sums be paid to Charles Brown and Rufus D. Wadleigh, no sums having been inserted in said will for them, but a book of said deceased coming to the possession of said executors, in which a schedule of his will appears in the handwriting of the deceased, in which is carried out one thousand dollars as given to Wadleigh, and five hundred dollars to Brown ?

" 5. Is the clause, " to my present attendant physician, to aid in the education of his children," to be construed to apply to the physician who attended at the date of the will, who then had children, or to the physician who attended during the last sickness and some time before, who had only one child ?

" 6. Is the bequest to Bradburn and wife for charitable purposes valid or void ?   If void, where does it go ?   It is admitted that the said Bradburns are in circumstances where they are likely to need the amount of such bequest for their own comfort, in order to live in the style to which they have been ordinarily accustomed.

" 7. Are the bequests to the masonic societies valid or void ? And your orators crave the privilege of referring, at the hearing, to a copy of the rules and regulations which appertain to the system of expending charities by said societies.   If void, where will such bequests go ?

" 8. Are the bequests to Everett and others to be expended individually, and the balance to them, to be expended collectively in charity, respectively valid or void, and if void, where will any assets reached under said clauses, if any, go ?

" 9. What bequests are included in the words " but no part of these sums donated for charitable purposes to be given till provision has been made for such as I had previously made ?"   Are the charitable bequests to Emmeline and the Bradburns and the masonic societies, any or all of them, postponed ? or does the postponement apply only to the charitable bequests to the executors ?

" 10. Are or not the postponed charitable bequests made subject to the payment first of all the other bequests in the will excepting the residuary bequest?

" 11. If any charitable bequests are void, and do not fall into

Everett *v.* Carr.

the mass of the estate, what percentage of them passes elsewhere, in case of a deficiency in the estate?"

The bill alleged that the estate was probably insufficient to presently pay the bequests, even if the charitable bequests should be declared void, and in such case there must be a new apportionment when an annuitant deceases and any of the estates in remainder fall in ; that the estate could be more expeditiously and satisfactorily settled, if the annuities could be purchased at their apparently present value, for a gross sum ; that the complainants and respondent have given written authority to the executors to buy in such of the annuities as can be purchased at reasonable rates ; wherefore the complainants ask authority for the executors to make the purchases.

So much of the will as is material is as follows :

" After the payment or provision being made for the entire amount of all my just debts and charges against my estate, I give, devise, and bequeath to the trustees hereinafter to be appointed, all the estate, both real, personal, and mixed, of which I may die seized and possessed, to have and to hold in trust for the following objects and purposes, to wit :

First of all, I give and bequeath to my most faithful housekeeper and servant for more than twenty years, the sum of twelve hundred and fifty dollars per annum, to be paid her by my trustees, in quarterly annual payments, during her natural life. I also give to her, during her natural life, the sum of five thousand dollars, to purchase a homestead, house, or place, where she, with her sisters, father and mother, if she so elects to live, may reside during her natural life, after which said estate to be subject to provisions hereinafter made. I further give to her the sum of one thousand dollars in money, and fifteen hundred dollars' worth of furniture, to be selected from any I have or may have in the house at the time of my decease. I also give her books and pictures to the value of three hundred dollars ; and with a view to as little change as may be in her household affairs, I direct that my silver service and silver ware may remain in her possession during her natural life, and

then be disposed of as may be the real estate or homestead, as may be hereinafter provided. I also give and order paid to her (Emmeline Thomas) the sum of one thousand dollars per annum so long as she may live, for her use for charitable objects or purposes. My horse "Billy," carriage, sleigh, harness, etc., etc., already given. Also, diamond pin, which last I may revoke hereafter. Having assigned to Emmeline, Mary, and Anna Thomas, or one of them, a policy of insurance on my life, the money collected therefrom will constitute a fund for the purchase of homestead, etc., and must be so considered as so much in payment of bequest to Emmeline, Mary, and Anna Thomas.

"Next, I give and bequeath to Anna and Mary, sisters to Emmeline Thomas, the sum of one thousand dollars each, and each six hundred dollars per annum during the life of one or both of them, to be paid by my trustees in quarterly annual payments.

"To Mrs. Geo. Bradburn, of Melrose, Mass., I give the sum of five hundred dollars, and one thousand dollars per annum to her and Mr. Geo. Bradburn, during the life of both of them; and should one survive the other, to the survivor five hundred dollars per annum. This, together with the sale of the dwelling-house, will yield support, nothing more; but I give and bequeath to him and her a further sum of twenty-five hundred dollars for them to use for charitable purposes, not debarring them from its use, or such part as they choose to use, should they actually need it for their own comfort,—to be left by will for charitable purposes, at their decease, if not used for charitable puposes while living." . . .

"To Charles Brown, through Charles H. Dennett as trustee, to be paid as Mr. Dennett may deem best for said Brown. . . . To my present attendant physician, to aid in the education of his children, one thousand dollars; to my namesake, Rufus D. Wadleigh ——."

"I give and bequeath to the "Rising Virtue Lodge," to the "St. Andrew's Lodge," and to the "Mount Moriah R. A. Chapter," for charitable purposes, each the sum of five thousand dollars. I give in trust, to be used purely and solely for charitable puposes, for the greatest relief of human suffering, human wants, and for

the good of the greatest number, the following sums to the following persons, viz.: To Rev. C. C. Everett, and my niece, his wife, the sum of thirty-five thousand dollars; to Hon. John A. Peters, twenty thousand dollars; to Elias Merrill, Esq., the sum of fifteen thousand dollars; and to C. H. Dennett, the sum of ten thousand dollars, each, to make known to the others, semi-annually, through the chairman of the trustees, the amount of his charities, and to whom given; but no part of these sums donated for charitable purposes to be given till provision has been made for such as I had previously made."

*J. A. Peters* and *F. A. Wilson*, in support of the will.

*Rowe*, for the Misses Thomas.

*McCrillis*, for Calvin Dwinel and next of kin.

*Davis & Drummond*, for the masonic institutions.

*Carr, pro se.*

APPLETON, C. J.   This is a bill in equity, brought under R. S. c. 77, § 5, by the executors of, and all persons except the respondents, interested under the will of Rufus Dwinel, and his heirs at law, to ask this court to determine the construction to be given to the various clauses in the same.

1. There are numerous legacies to different individuals. There is no language giving any priority to one legatee over another. It was undoubtedly the intention of the testator that all his legacies should be paid, but not that one should be paid at the expense of the others. "If a testator expressed himself in the following manner: "Imprimis" or "in the first place" I give such a legacy to A, and "in the second place" or "afterwards" I give such a sum of money to B; these words or variety of expression (considering the inattention and incorrectness with which wills are frequently drawn, as also the little regard paid to nicety of expression) will neither give A a preference to B, nor either of them a priority to

the other legatees, so as to exempt them from abating with such other legatees." 1 Roper on Legacies, 426 ; *Swazey* v. *American Bible Society*, 57 Maine, 523.

It follows that the bequests to Emmeline Thomas and her sisters, do not take precedence of the other bequests.

2. The testator, among other gifts, gave to Emmeline Thomas "during her natural life, the sum of five thousand dollars, to purchase a homestead, house, or place, where she with her sisters, father and mother, if she so elects to live, may reside during her natural life, " etc.   In the latter part of the clause by which the above is given he adds : " Having assigned to Emmeline, Mary, and Anna Thomas, or one of them, a policy of insurance on my life, the money collected therefrom will constitute a fund for the purchase of homestead, etc., and must be so considered as so much in payment of bequest to Emmeline, Mary, and Anna Thomas."

After the testator's decease, Emmeline Thomas and her sisters received the sum of seven thousand five hundred dollars upon the policy referred to in said will as assigned to them or one of them.

This sum must go to reduce the legacies to them.   It fully satisfies the legacy for the purchase of the homestead, and after satisfying that, the balance remaining must be charged against them, to be deducted from what they would otherwise be entitled to receive.

In case there should be a deficiency of assets to meet all the legacies to individuals, the abatement would be upon the amount due the Thomas sisters after the deduction is made of the amount received by them from the proceeds of the insurance policy.

3. The bequest to Emmeline Thomas for charitable purposes, as will be seen upon subsequent examination, is valid.   Being valid, when once paid by the executors, they must be regarded as released from all further responsibility.

4. No sums can be paid to Charles Brown and Rufus D. Wadleigh, none having been inserted in the will for them.   When the entire name of a legatee is omitted parol evidence cannot be admitted to supply the blank, for that would amount to a bequest by oral testimony.   In *Winne* v. *Littleton*, 2 Ch. Ca 51, A bequeathed

all his estate to his executor, leaving a blank, and died without naming any person executor.   The legacy was adjudged void. Similar decisions were had in *Baylis* v. *Attorney-general*, 2 Atk. 239, and in *Hunt* v. *Hart*, 3 B. C. C. 311.

The same principle applies with equal force when the amount of the legacy is left blank.   The blank was never filled by the testator.   It is not for the court to supply what the testator omitted or what with a change of purpose he may have intended to do.

5. The clause " to my *present* attendant physician to aid in the education of his children " can only apply to the physician who attended at the date of the will.   To one called in at a subsequent date, the word present would not be applicable.   " Whenever," observes Ellsworth, J., in *Gold* v. *Jordan*, 21 Conn. 16, " a testator refers to an actually existing state of things, his language should be held as referring to the date of the will, and not to his death, as this is then a prospective event."   A future physician, thereafter to be called, could not be the then " present attendant," to whom the legacy is given.

· 6. After making a bequest to Mr. and Mrs. George Bradburn, the testator adds : " This, together with the sale of the dwelling-house, will yield support, nothing more ; but I give and bequeath to him and her a further sum of $2,500 for them to use for charitable purposes, not debarring them from its use, or such part as they choose to use, should they actually need it for their own comfort, to be left by will, for charitable purposes, at their decease, if not used for charitable purposes whilst living."

In all cases the intention of the testator should control.   The particular intention should govern, rather than the general intention.   It is apparent that the testator doubted as to the sufficiency of his bequest " to yield support."   At any rate it would accomplish " nothing more."   He, therefore, bequeaths them a further sum, which they may use in whole or in part, for their own comfort, as they may choose.   They are to determine what their own comfort requires.   Now they are the objects of the testator's bounty.   He preferred, or must be regarded as preferring, them to

any unknown object of their bounty. He gave it to them primarily if they needed it, or chose to say they needed it. It was a "further sum" for their support, if they chose to so consider it. It is conceded that they will require it to enable them to live in the style to which they are accustomed. The very contingency exists in which they would choose to use it and in which they are expected and wished to use it.

The whole or the portion unexpended they were "to will for charitable purposes at their decease." But unless it was theirs, they could not will it. It could be disposed of by will, only because it belonged to them. They had, then, the entire ownership of this sum, to use for their own support and to dispose of by will.

The intention of the testator was, that the full ownership should be in his legatees. Primarily, they were to use it for their own support. Secondarily, they might use it for charitable purposes. They were to do as they chose, without being liable to account to any one.

The result is this, it is a legacy to them, and subject to their control in regard to its disposition.

7. The masonic lodges to which legacies are given are incorporations created for specific purposes, "with power to sue and be sued, to have a common seal and to change the same, to make any by-laws for the management of their affairs, not repugnant to the laws of this State, nor ancient masonic usages; to take and hold for charitable and benevolent uses," real and personal estate, to a certain value exceeding the legacies in this will, "and to give and grant, or bargain and sell the same, with all the privileges usually granted to other societies, instituted for purposes of charity and benevolence."

Being existent corporations, competent to take, a legacy may be given to them equally as to individuals. If made to them, it would be in aid of the object of their creation. If the legacies had been to them by name and nothing more, no objection could be taken to their validity. The allegation in the will, "for charitable purposes," is merely a reiteration of the alleged purposes of their cor-

porate existence.   Merely stating the object of the donor to be
coincident with the purposes for which the donee exists, cannot
defeat the gift.   Accordingly, legacies to masonic lodges have been
upheld by repeated decisions of courts of the highest respectability.
*Drake* v. *Fuller*, 9 N. H. 536 ; *Indianapolis* v. *The Grand Master
etc.*, 25 Ind. 518.

8.  The bequests to Everett and others are " in trust, to be used
purely and solely for charitable purposes,— for the greatest relief
of human suffering, human wants, and for the good of the greatest
number."   It cannot be doubted that this is a valid bequest for
charitable uses.   In *Saltonstall* v. *Saunders*, 11 Allen, 446, the
bequest was to trustees to hold and invest the same, and the income
thereof, and appropriate so much or the whole of the principal and
income as they might think proper " to the furtherance and promo-
tion of the cause of piety and good morals, or in aid of objects and
purposes of benevolence and charity, public and private or temper-
ance, or for the education of deserving youths."   This was held a
good, charitable bequest.   In *Johnston* v. *Swann*, 3 Madd. 457,
Sir John Leach held a bequest to trustees " for the benefit of such
public and private charities, as they in their discretion might think
fit," to be a valid charitable donation.   In *Drew* v. *Wakefield*, 54
Maine, 291, a bequest to executors or trustees, upon trust, to dis-
tribute among testator's deserving relations, and such indigent per-
sons as they may think proper, was upheld.   So in *Swazey* v. *Amer-
ican Bible Society*, 57 Maine, 523, a bequest " for the benefit of
needy single women and widows " was held valid.   A devise or
bequest in remainder to such charities as shall be deemed most
useful by the executor or administrator of one to whom the prop-
erty is given for life is valid.   *Wells* v. *Doane*, 3 Gray, 201.   " We
have no doubt," remarks Metcalf, J., in delivering the opinion of
the court, " that the bequest to charities is valid.   In *Chapman* v.
*Brown*, Sir William Grant said, ' a bequest to such charitable
purposes as the executors shall think proper is a good bequest.'
And there are also adjudications of this court which are decisive
of this point.   *Going* v. *Emery*, 16 Pick. 107 ; *Brown* v. *Kelsey*, 2

Cush. 243." In *Baker* v. *Sutton*, 1 Keene, 226, a bequest of personal estate, for such religious and charitable purposes, within the kingdom of England, as, in the opinion of the testator's trustees, should be deemed fit and proper, was held to be a good charitable bequest. In *Whicher* v. *Hume*, 14 Beavan, 509, a bequest to trustees, to be appropriated in their absolute and uncontrolled discretion for the advancement and propagation of learning in every part of the world, as far as circumstances will permit, was pronounced valid. In *Horde* v. *The Earl of Suffolk*, 2 Mylne & Keene, 59, where annual sums were bequeathed to persons, to be distributed in charity, at the discretion of the legatees, either to private individuals or public institutions, the court declared that the legacies did not fail, but that a scheme was unnecessary. "A charity," observes Gray, J., in *Jackson* v. *Phillips*, 14 Allen, 556, "in the legal sense, may be more fully defined as a gift to be applied consistently with existing laws, for the benefit of an indefinite number of persons, bringing their minds or hearts under the influence of education or religion, by relieving their bodies from disease, suffering, or constraint, by assisting them to establish themselves in life, by erecting or maintaining public buildings or works or otherwise lessening the burdens of government."

It will be perceived that these principles are alike applicable to the bequest to Emmeline Thomas as to the bequests to the executors, individually or collectively, for charitable purposes.

In *Waldo* v. *Caley*, 16 Ves. 206, the trust was to pay to the testator's wife the income for life, and directing her, with the advice and assistance of the trustees, to lay out half in promoting charitable purposes as well of a public as a private nature, and more especially in relieving such distressed persons, etc., as his wife shall judge most worthy and deserving objects, always giving a preference to poor relations. In relation to the bequest under consideration, the advice and assistance of the trustees are not invoked. In delivering his opinion Sir William Grant, M. R., says: "Upon the whole, however, the intention seems to be to vest in her a discretionary power of distributing to such charitable purposes as she shall

think fit; and, therefore, though the trustees are to advise and assist, yet in case of a difference of opinion it is hers that must prevail. Into her hands the whole money is to be paid; by her the distribution is to be made; and by her judgment the fitness of the object is to be determined." Upon appeal, the decision of the master of the Rolls was affirmed by Lord Eldon.

If this were not to be deemed a charitable bequest, then it must be regarded as a bequest to her. It is to "be paid to her" "as long as she may live, for her use for charitable objects or purposes," etc. In *Gibbs* v. *Rumsey*, 2 Ves & Beame, 294, the bequest was "unto my said trustees and executors, to be disposed of unto such person and persons, and in such manner as they in their discretion shall think proper and expedient," and this was held an absolute interest to them beneficially, or an absolute power of appointment, excluding the next of kin and the heir as to the produce of real estate.

9. The testator, after giving fifteen thousand dollars to three masonic lodges, "for charitable purposes," and eighty thousand dollars to Everett and others, in different sums, for the same purposes, adds, "but no part of these sums, donated for charitable purposes, to be given till provision be made for such as I had previously made."

The will is olographic. The careful accuracy or the technical language of a professional draftsman is not to be expected. We think, however, the meaning is sufficiently clear. "These sums, donated for charitable purposes," must refer to the bequests immediately preceding,—those to the masonic lodges and to Everett and others. These were not to interfere with bequests previously made. All the bequests "previously made" were to have precedence, including those to Emmeline Thomas and to the Bradburns.

10. It has been seen that the postponed charitable bequests are made subject to the prior payment of all the other bequests in the will excepting the residuary bequest.

The executors have no authority, under the will, to purchase annuities for the several annuitants named therein. If an annuity

were purchased for one who died short of the average expectation of life, the loss must fall on the executors. But all parties who can be interested in the provision of this will, or in the estate of the deceased, as executors, trustees, legatees, annuitants, and other beneficiaries, or as next of kin, with the exception of the respondent, have expressed the desire that annuities should be purchased for the several annuitants, at their present apparent value, for a gross sum. To do so would conduce to the speedy settlement of the estate. If the assent of all but the respondent has been had, his being obtained, there seems no objection to this course. No one would thereby be injured, and all having consented, the executors would be fully protected in so doing.

The estate is large. The executors are under no obligation to assume responsibility. It is important to all parties that the estate be settled as speedily as may be. The questions proposed in relation to the construction of the will and the distribution of the property of the testator are of importance, and are better determined now than at any other time. Reasonable costs and charges are to be allowed out of the estate to the parties litigant. *Drew* v. *Wakefield*, 54 Maine, 292.

According to the true construction of the will of Rufus Dwinel it is declared:

1. That the bequests to Emmeline Thomas and her sisters (outside of the life insurance policy and specific bequests of property) do not take precedence of the other bequests.

2. That the said Emmeline and her sisters, having received seventy-five hundred dollars upon the policy of insurance described in said will, as "assigned to one or all of them," cannot hold the same, and be also entitled to full allowance of all other provisions and bequests, without credit or deduction for said proceeds of said insurance policy.

3. The bequest to Emmeline Thomas is valid.

4. No sums can be paid to Charles Brown and Rufus D. Wadleigh, no sums having been inserted in the will as legacies to them.

5. The clause, " to my present attendant physician to aid in the

education of his children," applies to the physician in attendance at the date of the will.

6. The bequest to Bradburn and wife, of $2,500, is valid.

7. The bequests to the masonic lodges are valid.

8. The bequests to Everett and others, individually and in trust, are valid.

9. The bequests included in the words " but no part of these sums donated for charitable purposes to be given till provision has been made for such as I had previously made," are those to the masonic lodges and to Everett and the other executors.

10. The postponed charitable bequests are subject to the prior payment of all the other bequests in the will, except the residuary bequest.

And it is further ordered, that a master be appointed to report the reasonable costs and charges, which are to be a charge to the estate.

KENT, WALTON, DICKERSON, and DANFORTH, JJ., concurred.

CUTTING, J., being interested, did not sit.