# Mayor, &c. of Mobile *v.* Stein, Ex'or.

| 54 | 23 |
|----|-----|
| 128 | 180 |

### *Action to recover Taxes paid under Protest.*

1. *Right of taxation, surrender of; presumption as to.*—The right of taxation is essential to the existence of all governments; as well that of a city with limited powers, as any other. It is a settled rule, that this power will never be presumed to have been surrendered, or abandoned, unless it clearly appears that such was the intention.

2. *Mobile, city of; Stein contract construed.*—There is nothing in the contract, between the corporate authorities of Mobile and Albert Stein, in regard to the property known as "Stein's Water Works," which exempts it from taxation, by the municipal authorities, for the purpose of raising revenue.

3. *Taxable value of property; what properly estimated as.*—The additional value imparted to land, by a franchise conferring valuable privileges—as to take tolls, &c.—is properly estimated as a part of its taxable value.

4. *Cases reaffirmed and distinguished.*—The cases of *Stein v. Mayor,* &c., 17 Ala. 234, and *Stein v. Mayor,* &c., 24 Ala. 591, reaffirmed, and the present case distinguished from that of *Stein v. Mayor,* &c., 49 Ala. 362.

APPEAL from Circuit Court of Mobile.

Tried before Hon. JOHN ELLIOTT.

This cause was submitted to the circuit judge for decision, without the intervention of a jury, upon an agreed statement of facts, "both parties to have the right of appeal, upon the record without a bill of exceptions." The agreed statement of facts are as follows: 1st. On the 20th of December, 1820, the legislature passed an act "to incorporate an Aqueduct Company in the city of Mobile." 2d. On the 24th of December, 1824, the Mobile Aqueduct Company having failed to comply with the requisition of the act incorporating it, the legislature repealed the act, so far as the company was concerned, and transferred to the city of Mobile, all the rights and privileges, which had pertained to the company, under the act of incorporation. 3d. On the 12th of December, 1830, Mobile city contracted with certain parties to construct for it an aqueduct from a source near Spring Hill, the source being the same now used.

By the aid of these contractors, and others, certain reservoirs were constructed on land owned by the city, ditches and canals were dug, pipes of wood and cast iron laid, from the source, near Spring Hill and along various streets of the city. This work was accomplished in January, 1832. 4th. The city being in possession of the water works on the 1st of December, 1836, leased them to one Henry Hitchcock, for a

term of twenty years. 5th. On the 25th of December, 1837, the legislature incorporated the "Mobile Aqueduct Company," and empowered Hitchcock to assign his lease to it, but the company was never organized, and in 1838 Hitchcock surrendered his lease, and the possession of the water works, with all their appurtenances, to the city of Mobile. 6th. On the 26th day of December, 1840, a contract was made between the mayor, aldermen and common council of Mobile, and Albert Stein, under which they put him in possession of the works then owned by the city, on certain terms and conditions therein mentioned. The contract provided, " that, in consideration of certain covenants and agreements, the city transferred to Stein, his executors, administrators, or assigns, the sole privilege of supplying the city of Mobile with water from the three mile creek for twenty years, as well as all the advantages and benefits which accrued to the city under the acts mentioned in the agreed statement of facts, above set out. Under this agreement the city reserved the right to redeem the water works at the end of twenty years, upon the payment of their actual value at that time, to be determined in a manner provided in the agreement, and stipulated, that until such redemption, Stein should have quiet and peaceable possession. The agreement also provided, that if Stein did not complete the water works contracted for, within two years from the time the legislature should ratify the contract therein contained, " he should forfeit, not only the privileges conferred, but all the improvements and expenses he may have incurred, the same to enure to the use and benefit of the city of Mobile."

This contract was ratified by the legislature, and Stein faithfully complied with his portion of it. He was in possession of the water works thus constructed at the time of bringing this suit. It is further stated in the agreed statement of facts, "that no tax on the aforesaid water works, or the franchises connected therewith, was attempted to be levied from the said Hitchcock or said Stein until the year 1854, when for the first time a tax was demanded and levied."

On the 26th day of April, 1873, the city authorities demanded, and collected from Stein, the sum of one thousand nine hundred and ninety-five dollars and fifty cents, as taxes for the year 1873, alleged to be due by Stein, as owner of above mentioned water works. He paid this sum under protest, and gave notice that he would bring suit to recover it.

"The circuit judge" gave judgment in favor of Stein for the amount of the tax, and interest and costs. It is here insisted that this judgment was erroneous.

ALEX. McKINSTRY for appellant.—The case may be said to be *res adjudicata* for the appellant. This case was decided by *Stein v. Mayor, &c.,* 17 Ala. 234; *Stein v. Mayor, &c.,* 24 Ala. 591, and *Battle v. Mayor, &c.,* 9 Ala. 234.

R. & O. J. SEMMES and JOHN T. TAYLOR, *contra.*—Stein's contract with the city, under which he holds, is a lease for a term of years. There is a portion of an estate carved out of the whole, of which Stein has been put in possession; that is to say, a term of twenty years, the city retaining a remainder, or rather a reversion—and this is a definition of a lease for years.—2 Greenleaf's Cruise on Real Property, Title "Lease," pp. 78, 79; Taylor's Landlord and Tenant, p. 37. After the termination of the twenty years, Stein held as tenant from year to year or tenant at will. If the city be the owner in fee of the water works, whatever interest Stein holds, must be held under the city, and this disposes of the question of taxation between them. The former decisions did not touch this question.

MANNING, J.—The questions presented for our decision in this cause, are—(first,) whether or not the property known as *Stein's Water Works*—constructed for the purpose of supplying water from the Three Mile Creek to the inhabitants of Mobile—is subject to taxation by the municipal authorities for the raising of revenue; and (second) if the property is so subject, whether or not the additional value imparted to the land and other corporeal parts thereof by the franchises to take toll, &c., is to be estimated as a part of the taxable value of the property?

These very questions in reference to this identical property, after thorough argument have been twice before answered by this court, in two suits between the same parties.—*Stein v. The Mayor, &c., of Mobile,* 17 Ala. 234; and *Same v. Same,* 24 Ala. 591.

In the former, the court, by Dargan, C. J., say : "The right of taxation is essential to the existence of all governmen's, as well that of a city with limited powers as any other, and it is never to be presumed that this right is abandoned or surrendered, unless it clearly appears that such was the intention.   .   .   .   .   .   .   .   .   We must, therefore, look to the agreement itself and find upon its face a surrender, or a relinquishment of this right, or the exemption can not be successfully claimed by the plaintiff." Then, after an analysis and examination of the contract between the city and Stein—it is declared that, "No term of this agreement exempts the property employed or used in the execution of the works, from taxation; nor is such an

exemption a necessary inference from any thing granted, nor can it arise from any restriction imposed on the city."

In respect to the assessment of the property for taxation, the court decide that "the value of property must be estimated by the advantages, or profits that are or may be derived from it; and if one own tangible property with which is connected an intangible right or privilege, in forming a just estimate of the value, we must consider the tangible property in connection with the intangible right or privilege."

When the subsequent case, (that reported in 24 Ala. Rep.) was before the court, two of the three judges previously composing it, had resigned, and their places were occupied by others. This new court, after having "reviewed the ground," affirmed the foregoing propositions announced in the prior case, and enforced them with additional arguments. These cases were decided in this court in 1850 and 1854, respectively. The first of them arose out of the city's claim to taxes for this property upon an assessment of it at a large sum, under an ordinance imposing taxes for the year 1848, of "4-10ths of one *per cent.* on all the real and personal property within the corporate limits of the city." And the later case arose out of a taxation of the same property under an ordinance of the city passed in 1852—(by authority of the act of the legislature in 1857)—imposing a tax of 2 *per cent.* a year for five years, upon the real estate within the city, to aid in the construction of the Mobile & Ohio Railroad. Yet we notice in "the agreed statement of facts" in this cause, which is signed by the late city attorney, after the admission that Mr. Stein had faithfully performed his part of the said contract with the city—it is inaccurately recited that "no tax on the aforesaid water works, or the franchises connected therewith, was attempted to be levied from the said Hitchcock, or the said Stein, until the year 1854, when for the first time a tax was demanded and levied."

The counsel for Mr. Stein now insist that the case was not properly and correctly presented to the court on the former occasions; that Stein was then understood and regarded by the court, as the case was presented, as the owner in fee simple of the water works property, whereas (as they contend with much ingenuity) he was in fact only a lessee of them from the city as his landlord, and therefore not chargeable with taxes levied by the city.

In this, it seems to us, the counsel are in error. Those cases, or at least the first of them, arose within a few years after the contract with Stein was made, and while yet his transactions and operations under it were new and the facts well known in the community. They were presented and argued at great length, by lawyers of distinguished ability;

and it is evident from the reports of the cases, that the court had before it, and founded its opinions upon, all the documents and acts upon which the rights of Mr. Stein were founded and by which they were limited or explained. And by these documents and acts, much more than by admissions or affirmations in a case agreed on, the questions submitted to the court must then have been, and now be determined.

Both the provisions and the language, referred to in argument, of the instrument made between the city and Hitchcock, differ in some respects materially, from those in the agreement afterwards entered into with Stein; and when in the latter, words and expressions used in the former are avoided—it must be presumed that this was studiously and purposely done. The former is written in the technical terms and language usually employed in a lease; while in the latter they are not only not employed—but the writing is called an agreement—and is evidently one which is not intended to operate as a lease. While, therefore, Stein is sometimes called a *lessee* of the water works, and his absolute right to them was by the agreement limited to a "term" of twenty years, if at the end of that period the city would pay him the value of them, in which event it was provided that they should become the property of the city; yet we should be much misled, if we considered that the strict relation of landlord and tenant was created between the parties here litigant. If this were so, it might well be doubted, not only whether the city could impose taxes on these water works, to go into its own treasury, but whether also it, instead of Stein, is not the party to pay the State taxes thereon, which have been heretofore collected of Stein.

The city of Mobile is a public corporation, exercising a part of the political power of the State by authority of the General Assembly. Faculties and franchises which have been conferred by that body upon it, may be taken away. By the act of 1820, the privilege was conferred on a private corporation created by it, and called "The Mobile Aqueduct Company," exclusively of all other persons, to supply the city of Mobile with water for a space of forty years from that date. It having failed to comply with the provisions of the law, all the rights, privileges, powers and immunities granted to it were by an act of the legislature in the year 1824, granted to the city of Mobile. After several endeavors in various ways, all which had failed of success, to accomplish the purpose of having a sufficient quantity of water conducted into the city for the use of the inhabitants, the municipal authorities entered into a contract with Mr. Stein, in December, 1840, by which in effect, they consented upon terms stated in the agreement, to convey to him all the property

and materials the city owned and had, applicable to that purpose; and to relinquish in his favor the privilege which it had, and to aid in procuring from the General Assembly its grant to him of the sole privilege of supplying the city of Mobile with water from the Three Mile Creek for twenty years from the date of the agreement, and the sole right to have, possess and operate the water works erected for that purpose, after said period of twenty years until the city should purchase them of him at their fair value, to be ascertained as provided in the agreement; and that he should have the advantage and benefit of the ordinances enacted for the protection of the property and rights so to be acquired by him. It is added, also, that "as soon as the water shall be introduced under this agreement, the present water works shall be abandoned and discontinued." The city reserved no property in itself in respect to which it could exercise the rights of a landlord. It only stipulated for the right to repurchase the water works at their value. By the act of the General Assembly of January 7th, 1841, the provisions of this agreement were confirmed and enacted into a law; and all the rights, powers, privileges and immunities, not inconsistent with the terms of the agreement, which were granted to the Mobile Aqueduct Company, and to the Mayor, &c., of Mobile by an act passed December, 20th, 1820, and by an act passed December 25, 1837, were vested in and confirmed to Stein and his assigns. He was also authorized thereby to use the public roads in Mobile county for the laying of his pipes, and to dispose of his rights, privileges and immunities by deed, or to mortgage the same.

This enactment founded upon, and incorporating in it, the agreement, was not a lease but a charter to Stein. It has been so regarded by this court. It conferred upon him franchises derivable only from the sovereign authority, obtained, it is true, with the concurrence and aid of the city, but still a grant from the State of intangible privileges, which gave to the corporeal property its chief value. "If"—says Dargan, C. J. (in the case in 17 Ala. Rep.)—"a charter is granted to erect a railroad, and the company go on to complete the work, and it yields large profits, in forming an idea of its value, if we separate all the component parts of value and estimate each separately, we should fall far short of the intrinsic worth. The right to charge toll disconnected from the road would be worth nothing; and the land over which the road may run and the materials employed in its construction are of but little value when disconnected from each other. . . In the case before us, if we were to estimate the lot of land and iron pipes alone, the record shows us that their value is only $8,000; but the land and pipes, and the privilege of

charging all who may use the water, valued in connection with each other, are worth $75,000."

Whose is this valuable property? Does it belong to the city of Mobile? No one can doubt that it belongs to Stein, the appellee, and that the city of Mobile can acquire it only by a purchase according to the terms of the agreement and charter. Is it to be exempt from its portion of the general burden of taxation? The fact that the grant is for a term of years only, and after that, may be terminated by the purchase of the city, does not affect the question under consideration. Most grants of privileges from a political body are for a limited period. If a manufacturing company or a bank were chartered with valuable privileges for a period of twenty years, and its franchises at the end of that time were resumable by or would revert to the State, no one could suppose that this would prevent the State from levying taxes for the increased values produced by them, against the persons to whom they were granted. No reason can be assigned why the fact that the incorporeal privileges were conferred by the authorities which impose the taxes—should exempt the property thereby enhanced in value, from taxation. And we perceive no reason for not conceding in a similar case, a like authority to the government of a city.

The case of *Stein v. The Mayor, &c.*, of Mobile, in 49 Ala. Rep. 362, is not an authority against the views we have expressed. In that case the question was, whether or not the city had the right to require of Stein payment of the price of *a license* from it, for the privilege of exercising his rights under his charter and the agreement of the city; and it was decided that it had not. It was held, in effect, that they constituted a license irrevocable by the city. It does not, therefore, follow, however, that his water works are not subject to taxation. In the *City of Savannah v. Charlton*, the Supreme Court of Georgia held that a physician regularly licensed according to the laws of the State and by its authority, to practice medicine, was entitled to do so any where in the State, and therefore in Savannah, without being obliged to pay for a license from the city authorities; but that the city might notwithstanding tax the practice of his profession within the corporate limits.—36 Ga. 460.

Adhering to the decisions heretofore made by this court, we reverse the judgment of the court below and remand the cause.