## OLIVER v. BRENNAN.

## In re WRIGHT MOTOR CO.

(District Court, N. D. California, Second Division. August 25, 1923.)

No. 640.

1. **Evidence ⬅215(1), 318(3)—Corporate statements held hearsay and not competent against trustee in bankruptcy, but competent against director producing them.**

   In suit by corporation's trustee in bankruptcy against former stockholder and director to set aside alleged fraudulent transfers, corporate statements produced by defendant, and unsupported except by bookkeeper's testimony that they accurately represented the corporate books, were hearsay and not competent against the trustee, but, so far as disserving, were competent against defendant as admissions.

2. **Corporations ⬅542(3)—Transfers, though informal, held corporate transfers and subject to be set aside by corporate creditor.**

   Where corporation was close corporation and transfers of corporate assets to stockholder and director was had with knowledge, consent, agreement, and approval of all directors and stockholders, they were corporate transfers, however informal, and subject to be set aside for fraud by corporate creditors.

3. **Corporations ⬅630(1)—Existence continues for remedial purposes, despite forfeiture of franchise.**

   Notwithstanding statutory forfeiture of corporate franchise for nonpayment of license tax, under the California statutes, the corporate existence continues for all adverse remedial purposes.

4. **Bankruptcy ⬅172—That corporation had only one or three stockholders held not to render transactions private and defeat relief to trustee.**

   That corporation had but three stockholders, and later but one, does not transform it, and its acts in transferring assets to one of the stockholders, from corporate to private or individual status or capacity so as to prevent relief to trustee in bankruptcy.

5. **Corporations ⬅542(3)—Transfer to stockholder and director making corporation insolvent presumed fraudulent, regardless of intent.**

   Where corporation, when substantially indebted and when its business outlook was unpromising, transferred large part of its assets to one stockholder in payment for stock sold by him to another stockholder, and insolvency was then contemplated and thereby caused, the transfers, regardless of intent, are presumed and deemed fraudulent, and avoidable by creditors.

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**6. Corporations** ⊜⟶542(3)—*Director receiving transfer must vindicate it, though directors were the only stockholders.*

Whether directors of corporation, who were its only stockholders, were trustees for creditors, their status was so far fiduciary that one of them receiving corporate assets in payment for stock sold another director has burden of proving that transfers were in good faith, fair, reasonable, and for adequate consideration, or that corporation was solvent and not contemplating insolvency.

**7. Bankruptcy** ⊜⟶142—*Avoidance of fraudulent transfer is for benefit of all creditors, though transfer only fraudulent as to existing creditors.*

Even though transfers of corporate assets to stockholder and director were fraudulent only as to existing creditors, when avoided by trustee in bankruptcy the benefit of the recovery extends to subsequent as well as existing creditors.

**8. Bankruptcy** ⊜⟶305—*Recovery upon setting aside of transfers held limited to certain claims.*

Where transfers of corporate assets to stockholder and director were in payment for his stock, sold W., another stockholder and director, recovery upon setting aside of the transfers as fraudulent will be limited to amount necessary to pay expenses of bankruptcy proceedings and just claims excluding those of W., or others in like case, as equity will not avoid fraudulent conveyances for benefit of those in pari delicto.

In Equity. Suit by A. J. Oliver, as Trustee in Bankruptcy of the Wright Motor Company, against James F. Brennan. Decree for plaintiff.

Brownstone & Goodman, of San Francisco, Cal., for plaintiff.

J. J. Dunne and Jas. F. Brennan, both of San Francisco, Cal., for defendant.

BOURQUIN, District Judge. This is a suit by the trustee of a bankrupt California corporation, to avoid its transfers of its property, alleged to be fraudulent in respect to creditors.

The evidence is that defendant, a lawyer, one West as representative of one Shannon, a public officer, and one Wright, proprietor of an auto sales business, on February 26, 1920, incorporated the bankrupt. The charter capital stock was $37,500, of which each incorporator received one-third—defendant and West for money paid in full, and Wright for the lease of his sales premises, good will, and auto sales agency.

These three were sole stockholders, directors, and officers until July 14, 1920, when all the stock was transferred to Wright, and Shannon superseded defendant as director.

Throughout and until the stock was transferred to Wright, if not until fully paid for, defendant dominated the corporation in behalf of himself and Shannon, though Wright was active manager.

Dissension speedily arose. There was some difficulty in securing autos from the factory, Wright neglected business, and defendant, accusing Wright of misrepresenting the magnitude of his business prior to incorporation, was critical and dissatisfied.

In April, 1920, he proposed, if he did not insist, that the corporation be liquidated or that Wright buy his stock and Shannon's.

April 24, 1920, Wright agreed to buy the stock and defendant to sell it. Wright had no money to defendant's knowledge, and as directors they authorized the corporation to loan to Wright on his six months' note, then given, $10,000 for the first payment.

Wright testifies the corporation received nothing for any of its transfers herein referred to, and only on cross-examination of defendant, and orally alone, is there disclosure of this note. It is not in the assets of the bankrupt estate, and whether paid, or what became of it, does not appear.

The corporate check for $10,000 was then issued by defendant and Wright, payable to and cashed by defendant. Thereafter other like checks aggregating $8,472.92 were cashed by defendant, the last on August 31, 1920. In the meantime defendant further complained against Wright and that the July installment of the stock purchase price had not been paid, reminded Wright the latter was to continue manager only so long as the corporation was conducted without loss; that he (defendant) was determined to get out or liquidate the corporation, "close it up now so that there will be no loss to anybody, I don't want to be liable to any of the creditors," and warned Shannon that debts were probable for which the latter would be liable.

Theretofore Wright had advised defendant that withdrawals of corporate money as aforesaid would deplete the treasury, deprive the corporation of money with which to operate, and compel cessation of business. Nevertheless, to gratify Wright's request that the corporation continue in the hope that he might sell the stock or 'get in new money, defendant refrained from liquidation and stated that in default of money he would take autos for the balance due upon the stock.

Accordingly, July 14, 1920, as directors they authorized the corporation as it did to transfer all of its autos and other property to Shannon to secure Wright's note for $5,500 in payment to Shannon on the stock purchase, and then or thereabouts others of the corporation's autos or their proceeds were transferred to defendant in like payment. On the day last aforesaid, the stock was transferred to Wright.

November 13, 1920, in substitution for the aforesaid security to Shannon, the corporation transferred to defendant, autos, and its 30-day note for $500 yet unpaid.

The aggregate of money and autos so transferred to defendant is $25,000.

February 26, 1921, the corporation assigned for benefit of creditors. March 5, 1921, its franchise was forfeited in so far as local statutes accomplish it for failure to pay license tax, and May 4, 1921, the corporation in this court was adjudicated a bankrupt. The assets in the estate are $868.40, and the claims allowed, including Wright's for services and loan in amount $4,989, number 39 in amount $9,436.95.

There are corporate creditors in amount at least from $1,000 to $1,650, partly of that status from the beginning and wholly from a time prior to transfers exceeding all said claims.

Aside from the foregoing, there is little of the condition of the corporation during the time of the transfers. Defendant's statements

that it was "solvent" are mere conclusions discredited by all competent circumstances, including his own utterances and acts, his behavior, significant reactions to like circumstances.

[1] He tenders corporate statements, March to June, 1920, both inclusive, which are without support save the corporate bookkeeper's testimony that they accurately represent the corporate books.

If they are competent evidence and truly set out corporate condition, the corporation was then solvent. But not only are they hearsay and not competent against the creditors' representative plaintiff, but they, too, are discredited by circumstances to a degree that denies to them credibility. To some illustrate, the statement for March, and after little business, in substance sets out that assets are $36,300 in excess of liabilities, and the statement for April, after the payment of $10,000 to defendant, likewise sets out that assets are $34,500 in excess of liabilities. Defendant, however, testifies that at this latter time the "liquid" assets were $10,000 to $12,000—not even the $15,000 balance of original capital—and says nothing of liabilities.

These statements presented by the director defendant are admissions by him in so far as disserving; that is, in respect to corporate liabilities, that for March disclosing $28,675 of the latter, and that for June, $187,585, to offset which is no competent and definite evidence of assets save of the stock subscriptions paid, $37,500.

[2] In the matter of intent, defendant, Shannon, and Wright, the corporation, each testify to none to hinder, delay, or defraud creditors. To briefly dispose of defendant's contentions, as set out in its brief, the bankrupt was a "close corporation, and every transaction had in connection with any transfer was had with the knowledge, consent, agreement and approval of all the directors and all the stockholders." Hence, however informally defendant secured the corporate property, it was by corporate transfers; and in consequence is jurisdiction herein to determine if voidable by any creditor. Park v. Cameron, 237 U. S. 616. 35 Sup. Ct. 719, 59 L. Ed. 1147.

[3, 4] So far as the statutory forfeiture of the corporate franchise is concerned, it is so far qualified that corporate existence continues for all adverse remedial purposes. Most statutes so provide, and that California's do was held by Judge Dietrich in Re Double, etc., Co. (D. C.) 210 Fed. 980. That the corporation had but three stockholders during part of the transfers, and but one during the others, does not transform it and its acts from corporate to private or individual status or capacity. In some instances that consequence follows, but only to secure justice to creditors and not to defeat it.

[5] The evidence is clear that within two to nine months after incorporation, and at a time when the corporation was substantially indebted to creditors yet unpaid, when its assets and liabilities and business outlook were so far unpromising that the stockholders anticipated further debts, feared personal liability, and contemplated liquidation, the defendant and his codirectors and stockholders for their personal advantage and by their control procured the corporation to transfer to defendant $25,000 or two-thirds of its charter capital stock and without any consideration, voluntarily for $15,000 if not all of it.

And it is a fair and reasonable inference made that if the corporation was not insolvent at the time of the transfers, the insolvency that speedily followed was then contemplated, inspired the transfers, and was by the latter caused.

In these circumstances the law is plain that the transfers, regardless of intent, are presumed and proven to be fraudulent conveyances, and avoidable by any creditor.

[6] Moreover, whether or not these directors were trustees for creditors (see cases, 14a C. Jur. 169), their status was so far fiduciary in respect to creditors that they are subject to the rule that these corporate transfers challenged, the burden is defendant's to vindicate them. See Geddes v. Mining Co., 254 U. S. 599, 41 Sup. Ct. 209, 65 L. Ed. 425, and cases therein cited.

That is to say, defendant must prove that the transfers were in good faith, fair, reasonable, and for adequate consideration or at a time when, excluding them, the corporation was solvent and not contemplating insolvency; in brief, defendant must prove the transfers are not fraudulent in respect to corporate creditors.

Therein he failed.

[7] Two cases in point are Baldwin v. Wolff, 82 Conn. 559, 74 Atl. 948, and Garrow v. Fraser, 98 Wash. 88, 167 Pac. 75, in which it is held that corporate transfers of assets to pay for stock purchased by one stockholder from another are voidable in behalf of creditors. The transfers in the instant suit are fraudulent as to subsequent as well as to existing creditors. But if fraudulent only as to the latter and avoidable only by them, it is well settled that when avoided the benefit of the recovery extends to both classes of creditors. Kehr v. Smith, 87 U. S. (20 Wall.) 36, 22 L. Ed. 313; Spencer v. Caverhill (Iowa) 133 N. W. 450.

To this general rule is nothing contra in Globe v. Martin, 236 U. S. 288, 35 Sup. Ct. 377, 59 L. Ed. 583, and the Bankruptcy Act (Comp. St. §§ 9585–9656), though American v. Duncan, 254 Fed. 780, 166 C. C. A. 226, is otherwise.

If these general and settled principles of equity are in any wise departed from by local law or decisions, the fact is not cited or known to the court.

[8] In respect to the recovery, necessarily money only, defendant having disposed of the autos, it would serve no useful purpose to decree a greater amount than with present assets will suffice to satisfy all just claims and reasonable allowances and expenses in the bankruptcy proceedings.

The excess is the property of defendant, and need not be by him paid into the bankrupt's estate to be by it repaid to him. Just claims exclude Wright's and all in like case, as any in behalf or right of the bankrupt; for equity will not avoid fraudulent conveyances to benefit those in pari delicto. See Parker v. Travers, 74 N. J. Eq. 812, 71 Atl. 612. Whether or not these latter may share pro rata or otherwise in the other assets of the estate, their claims having been allowed, is not decided.

It is believed the flexibility of equitable proceedings authorizes a decree in general terms for the necessary amount aforesaid, for a present payment of $4,500, for any necessary additional amount upon the referee's certificate in due time, and for return of any excess to defendant.

Costs to plaintiff. Decree accordingly.