*42 • Mr. Justice HÜNÍ
delivered the, opinion of the court.
'The first question is this: By the acts organizing this company, 'and by the acts loaning the credit of the State and'the proceedings under the same, was an agreement cre- . ated on the part of the State that the Pacific road should ‘not be taxed until.it was builtand finished and had declared-a dividend,- and that for two years after it was finished it should be liable to taxation only in common with other property of the State and at the same rate ?
'The fight, of taxation is a sovereign right, and presumptively beloijgs to the State in regard to every species of property and to an unlimited extent. The right may be waived in particular instances, but this'Dan only be done by a clear expression of the legislative will. The cases of Tomlinson v. Branch,* and Tomlinson v. Jessup,† in this court, and many others referred’to'in those cases, show that when a contract of exemption from taxation is thus established it is binding upon the State, and the action .df the State in the passage of laws .violating its tetms will not be sustained.‡ The principles of law are Sufficiently-settled. The real question arises upon their'application to the facts of the case.
"Upon-the. facts presented by the agreed case before us we are of the' opinion—
1st. That the twelfth section of the act of 1852 created a contract between the State and fail road ’.company, by which the railroad was exempt from taxation until it was -completed and.put in operation, and until it should declare a dividend on its capital stock,, not^ however, • extending ■longer than two years after.-its completion.
-2d.' That the ordinance of 1865, imposing’>a tax of ten per cent, upon its gross, earnings before the road was. completed .and in operation, and had declared a dividend, was^a viohh' tion of .this contract,, and that- the, levy fot its enforcement was illegal.
We omit a. reference to other questions which have been *43 argued and express no opinion upon them. Ve- base our opinion' upon the effect of the statutes already cited.
The authorities which have -been referred to show that a. State legislature may make-a contract to -exem'pt a corporation from taxation by which it wifi be bound.
That the facts recited constitute such an agreement we think sufficiently plain. The Pacific corporation was unable to raise funds for completing its road. To induce it -to go on with its work and to induce individuals and counties to subscribe for what the legislature evidently deemed an enterprise of public benefit, it made loans.of the credit of theStato from time to time. To make the franchise still more' valuable to the company, and to the end that individuals- and counties should be induced to subscribe to the-- stock, the legislature added an exemption from taxation until the road should -be completed and in operation, aud should have declared a dividend. That the money value of this exemption was great is evident from the fact that the tax imposed for a single year, commencing October 1st-, 1866, amounted to $253,644.
This transaction amounted to .a contract between the Stafe-' and the corporation that there should be no taxation of the company until the -occurrence of the stipulated events.* In delivering the opinion in The Wilmington Railroad v. Reid,† Mr. Justice Davis says.: “It has been so often decided by this court that a charter of incorporation granted by a State creates a contract between -the State and the corporators, which the State cannot violate, that it woúld be a work of supererogation to repeat the reasons on which the argument is founded. ... If the-cou'tract is plain and unambiguous, and the meaning of the parties to it can be clearly ascer-' tained, it is the duty of the court to give -effect to' it the same-as if it were a contract between private persons, without regard to its supposed injurious effects upon-the public interests.”
*44 The statute of 1852 provided for an exemption from taxation, of the li Pacific Railroad,” its, bed,-and of its- “ buildings,-machinery, engines, cars, anil other property.” Thp tax- imposed by the’ ordinance of 1865 was án “ annual tax of ten, per centum -of all their gross receipts for the transportation of freight aud passengers.” It was directed “to be levied, and collected from the-Pacific Railroad.” In The Wilmington Railroad v. Reid,* it was held that-a statute exempting all the property of a railroad company from taxation exempts not only the rolling stock aud/real estate owned by it and required by'the company for the successful-prosecution of ijts business, but its franchise also. In the case’ ,before, us the road-bed, buildings, machinery, cars, and .other property not onty, but the .“Pacific Railroad” is de elated to’be exempt.from taxation. We cannot doubt that -’a contract nob to tax a-railroad company dr its property is broken by the levy of a tax upon- its gross receipts for the transportation of freight and' passengers.
A suggestion is made that the imposition in question iá not'a. tax, for the reasonthat the' ordinance imposing’it provides-that the same shall be appropriated by-the General Assembly in payment of the. principal and interest due and to-become due upon the bonds issued to the company by the State. The purpose td which the State shall apply, the proceeds of a tax is not material so long as -it.is a public purpose,- and that the payment of the debts of a State is a .public¿purpose does not admit of doubt. - It is.called a.tax both in the agreed statement of facts before Us arid in the .ordinance, imposing' it. Thus, “ there shall be levied and Collected an annual tax'of ten per .centum of all their gross receipts,”. &c., “which tax shall be'assessed and collected in •the county of St. Louis in the same-manner as other Státe -taxes arr assessed and'collected.” “ The'tax'in this ordinance specified shall be. collected from each company,” &c. ... . Should either of. said companies refuse- or neglect to pay said tax as herein required,-”, &c.. A tax upon receipts *45 is one of the-' recognized modes of taxing corporations, as well under State laws as under the laws of the General Goy'ernment.
• ' The ordinance of 1,852 was either the imposition of'a tax or it was an act of high-handed violence, a forcible seizure of private property, without law or authority, an act-which, if committed by an individual, would amount .to- robbery. The cáse before us will justify,no such imputation upon the State of Missouri.
The result of these views is the reversal of the judgment below, and'in accordance -with the stipulation in the record, judgment is ordered in favor of the plaintiff in error for six cents damages and for costs, and the case is remanded; with-directions that a judgment be entered accordingly'. .

 15 Wallace, 469.

 Ib.,454.

 Osborne v. Mobile, 16 Id. 481; Humphrey v. Pegues, Ib. 247, where the cases are collected.

 Humphrey v. Pegues, 16 Wallace, 244; Wilmington Railroad v. Reid, 13 Id. 264.

 13 Wallace, 266.

 13 Wallace, 264.