(95 South. 3)

## STATE et al. v. CHURCH OF THE ADVENT. (6 Div. 800.)

(Supreme Court of Alabama. Jan. 11, 1923.)

1. **Taxation** ⬉244 — **Application of rent of property to religious purpose does not make it exempt.**

Under Const. 1901, § 91, and Act of 1915, p. 386, exempting property from taxation when it is used exclusively for religious worship, property owned by a religious corporation, but rented by it for the business of conducting a rooming house, is not exempt, though the rent is applied to a religious purpose.

2. **Taxation** ⬉244—**Statute subjecting rented property of religious corporation to tax merely declared existing rule.**

Acts 1919, p. 282, adding to the statute which exempted from taxation property used for religious purposes a proviso that the property rented for business purposes shall not be exempt though its income may be used for religious purposes, was merely a definite statement of what was necessarily implied in the Constitution and Act of 1915, p. 386, making the exemption without the proviso.

Appeal from Circuit Court, Jefferson County; J. Q. Smith, Judge.

Action by the State of Alabama and Jefferson County against the Church of the Advent to collect taxes for the years 1916–1921, inclusive. From a judgment holding the property exempt for the years 1916–1920, inclusive, plaintiffs appeal, and defendant by consent assigns as error the ruling of the court holding the property taxable for the year 1921. Reversed and remanded.

⬉For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

This is a proceeding to subject certain real estate of the defendant, a religious organization, to the payment of ad valorem taxes for the tax years of 1916 to 1921, inclusive, and was tried upon an agreed statement of facts.

Upon submission of the cause the court below held the property was exempt from 1916 to 1920, inclusive, but was liable for taxes for the year 1921. The state and county have appealed from the judgment holding the property exempt for the years 1916 to 1920, inclusive, and by consent appellee has assigned as error the ruling of the court holding the property taxable for the year 1921. The agreed statement of facts is as follows:

"Agreed Statement of Facts.

"The following is admitted as being the facts in the above case:

"First. The value fixed by the board of revenue of Jefferson county is not excessive and the only question to be decided is whether or not the property described and sought to be assessed is subject to ad valorem taxation.

"Second. The property which it is sought to be assessed is a portion of the property donated to the church by the Elyton Land Company many years ago, during the early days of Birmingham. This property which was so donated fronts 200 feet on Sixth Avenue North, and extends a distance of 190 feet on Twentieth street, and that portion of it which the board of tax adjusters seeks to make liable for the payment of ad valorem taxation fronts 80 feet on Twentieth street, and extends along an alley a distance of 150 feet. On this 80 feet of the church's property there was erected, some 17 or 18 years ago, a residence for the use of the rectors of the Church of the Advent, and this building was used as the residence of the various rectors of the church continuously from the time of its completion until April 1, 1913. Shortly before that date the present rector, Dr. M. S. Barnwell, came to Birmingham to serve the church as its rector, and he found that the building was much too large for his needs (he being without family), and he also found that the building had become unsuitable as a place of residence, owing to the encroachments of business upon the property. He asked permission from the governing board of the church to allow him to rent out the building, and to turn the rents derived therefrom over to him, and he would rent a residence more suitable for his occupancy. The vestry of the church permitted him to do this, and he accordingly secured a tenant for the building, and rented it to her to be used as a residence. This tenant went into possession of the building April 1, 1913, and has continued to reside in the building ever since. In addition to using the building as her residence she has also rented out rooms in this building, and has also kept boarders.

"In April, 1920, the Church of the Advent purchased a rectory from the Birmingham Realty Company, and has used the rents derived from the old building above mentioned in payment for the new rectory; this arrangement beginning in June of 1920.

"Taxes were paid on the new rectory for the year 1920, but at the request of the Church of the Advent the new rectory was exempted from the payment of ad valorem taxes after the year 1920. All the rents received from the leasing of the old rectory were paid over to the rector of the church from April 1, 1913, to the first of June, 1920, and none of this money was ever paid into the treasury of the church during that time, but was paid directly to the rector by Jemison & Co., who acted as agents for the building, and who collected the rent on same."

Harwell G. Davis, Atty. Gen., for appellants.

The test by which it is determined whether or not the property is exempt is the use of the property, and not the purpose to which the proceeds are devoted. 160 Ala. 253, 48 South. 659.

Wm. M. Walker, of Birmingham, for appellee.

The rents derived from the property being devoted to religious or charitable purposes, it was exempt. The intention of the Legislature must govern in ascertaining the extent of tax exemptions; and when the exemption is to religious institutions, the same strict construction will not be indulged in that would be applied to corporations created and operated for private gain or profit. 87 Tenn. 241, 10 South. 284; 71 Conn. 316, 42 Atl. 87, 43 L. R. A. 490; 92 Tenn. 188, 21 S. W. 321, 19 L. R. A. 289.

GARDNER, J. [1] The agreed statement of facts discloses that the property sought to be taxed, although owned by the Church of the Advent, was not actually used for religious purposes, but was rented by the defendant to a person who used the property as a boarding house. The appellee contends that the proceeds derived from this rental were used for religious purposes, and that the property was thereby exempt from taxation, while appellant insisted that the test by which it is to be determined whether or not the property is exempt is the use and not the purpose the proceeds are devoted to. We are of the opinion that the contention on the part of the state is sustained by the holding of this court in Anniston City Land Co. v. State, 160 Ala. 253, 48 South. 659, construing section 91 of the Constitution of 1901. This section of our Constitution forbids the Legislature to tax "lots in incorporated cities * * * with the buildings thereon, when same are used exclusively for religious worship, for schools, or for purposes purely charitable." The Constitution of the state of Kansas contains a similar provision, and this court, in Anniston City Land Co. v. State, supra, followed the holding of the Kansas court in Washburn College v. Shawnee, 8 Kan. 344, wherein the court, speaking through Justice Brewer, said:

"To bring this property within the terms of the section quoted it must be 'used exclusively

for literary and educational purposes.' This involves three things: First, that the property is used; second, that it is used for educational purposes; and, third, that it is used for no other purpose. * * * Nor is ownership evidence of use. * *. * This is too plain to need either argument or illustration. If the framers of the Constitution had intended to exempt all property belonging to literary and charitable institutions from taxation, the language employed would have been very different."

It was therefore held in this state that exclusive use, irrespective of ownership, was, under this provision of the Constitution, the test of the right of exemption. Under such construction therefore, the question of ownership becomes immaterial, but the matter of exemption is rested upon the use to which the property is put. The rent of the property here in question is but an incident to ownership, and it must necessarily follow as a logical conclusion that if the ownership is immaterial, the disposition of the rent, which is an incident to the ownership, is likewise of no consequence in construing this provision of our Constitution.

This question has been many times determined in other jurisdictions. In Y. M. C. A. v. Douglas County, 60 Neb. 642, 83 N. W. 924, 52 L. R. A. 123, numerous quotations from the authorities are set out, from which we take the following excerpt:

"To hold that property rented for business purposes is exempt when the rentals or income therefrom are used exclusively for religious, charitable, or educational purposes is extending the operation of the law further than is warranted by the language used. There is a clear and well-defined distinction between the use of property and the use of the income derived therefrom. * * * Government cannot discriminate between the uses which different societies or individuals will make of the proceeds of their business, and determine that this society or individual will make a more worthy disposition of the proceeds of his business than that, and therefore the one shall be taxed and the other not. * * * The fact that the income derived from rents or parts of the building not used is devoted exclusively to the objects and purposes of the association, and not used for the benefit or profit of its members, can make no difference. The law looks to the property as it finds it in use, and not to what is done with its accumulations."

In Fitterer v. Crawford, 157 Mo. 51, 57 S. W. 532, 50 L. R. A. 191, the Missouri court, construing similar language, said:

"There is a very material difference between the 'use of a building exclusively for purely charitable purposes' and renting it out, and then applying the proceeds arising therefrom to such purposes. To rent out a building is not to use it, within the meaning of the statute, but, in order to use it, it must be occupied or made use of."

To like effect see the following authorities: First Methodist Church v. City of Chicago, 26 Ill. 482; Old S. Soc. v. City of Boston, 127 Mass. 378; City of New Orleans v. St. Patrick's Hall, 28 La. Ann. 512; Massenberg v. Grand Lodge, 81 Ga. 212, 7 S. E. 636; City of New Orleans v. New Orleans Soc., 27 La. Ann. 436; Gray's Limitations, § 1336.

The act of 1915 (Acts 1915, p. 386), so far as the question here involved is concerned, followed the language in section 91 of the Constitution exempting such property from taxation "when the same are used exclusively for religious worship, educational or purely charitable or fraternal purposes." It is to be noted there is no exemption of property owned and belonging to such institutions, but the exemption applies to such property regardless of ownership when the same is used exclusively for these purposes. Speaking to this question, the Kansas court in the Washburn College Case, supra, said:

"Nor is ownership evidence of use. Full possession and perfect title are consistent with total failure to use. This is too plain to need either argument or illustration. If the framers of the Constitution had intended to exempt all property belonging to literary and charitable institutions from taxation, the language employed would have been very different. They would have used the simple, ordinary language for expressing such intentions. The fact that they ignored 'ownership,' and made 'use' the test of exemption, shows clearly that they recognized the essential distinction between the two, and established the latter rather than the former as the basis of exemption."

[2] The Legislature of 1919 (Acts 1919, p. 282) in order that there may be no misunderstanding, added a proviso to such exemption to the effect that any property owned by any educational or charitable institution let for rent or hire or used for business purposes shall not be exempt from taxation, notwithstanding its income may be used exclusively for educational, religious, or charitable purposes. This was, however, but a plain and definite statement of what we conclude was necessarily implied in the Constitution and the previous act of 1915.

The conclusion which we have here reached appears from the cases cited above to be sustained by the overwhelming weight of authority, and, indeed, where language of a similar character was under construction, we have found no cases to the contrary. State v. Fiske University, 87 Tenn. 241, 10 S. W. 284, Yale University v. New Haven, 71 Conn. 316, 42 Atl. 87, 43 L. R. A. 490, and Book Agents, etc., v. Henton, 92 Tenn. 188, 21 S. W. 321, 19 L. R. A. 289, cited by counsel for appellee, have been examined, but we are persuaded there is no holding in any of these cases which militate against the conclusion here reached.

The Anniston City Land Co. Case, supra, reached this court upon a second appeal (Anniston City Land Co. v. State, 185 Ala. 482, 64 South. 110), and the holding upon

this second appeal very clearly sustains our conclusion in the instant case, and in principle is decisive thereof adversely to the contention of the appellee. We are therefore of the opinion that the property here in question was subject to taxation for each of the years contended for by the state and county.

The judgment of the court below will accordingly be reversed, and the cause will be remanded for further proceedings therein in accordance with this opinion.

Reversed and remanded.

ANDERSON, C. J., and SAYRE and MILLER, JJ., concur.