182 So. 59

**WARE LODGE NO. 435, ANCIENT FREE AND ACCEPTED MASONS, v. HARPER.**

**5 Div. 281.**

Supreme Court of Alabama.
June 16, 1938.

Richard H. Cocke, of Alexander City, for appellant.

A. A. Carmichael, Atty. Gen., B. W. Simmons and Wm. H. Loeb, Asst. Attys. Gen., and Sam W. Oliver, of Dadeville, for appellee.

THOMAS, Justice.

The action was on the common counts by the Ware Lodge of Masons against the tax collector for taxes paid under protest.

The complaint in one count was in assumpsit for money had and received.

The plea was in short by consent. The cause was submitted to the court without a jury and upon an agreed statement of facts "and certain stipulations."

The stipulations referred to are as follows:

"That the issues in this proceeding are properly joined by the plaintiff's single count in general assumpsit for money had and received, and the defendant's plea of the general issue in short by consent, with leave to the defendant to show thereunder all matters which might properly be specially pleaded, and with leave to the plaintiff to show any matters in reply which might properly be set up by special replication.

"It is further agreed that under the issues, as thus framed, there is presented, among other things for the consideration of the Court, as fully as though specially pleaded, the Federal question whether or not any Constitution of the State of Alabama, adopted since March 17, 1875, or any Act of the Legislature of the State of Alabama, approved since March 17, 1875, and which purports to revoke or repeal any privilege, immunity or exemption from taxation granted to the plaintiff by Section 5 of an Act of the Legislature of Alabama, approved December 9, 1859, [Acts 1859–60, p. 458] and Section 5 of an Act amendatory thereof, approved March 17, 1875 [Acts 1874–75, p. 160] is in contravention of the provisions of Section 10 of Article 1 of the Constitution of the United States [U.S.C.A. Const. art. 1, § 10] prohibiting any State from passing a law impairing the obligations of contracts.

"The facts hereinafter agreed to are all the facts deemed necessary by the parties to be submitted to the Court for the determination of the issues in this case, and shall constitute all the evidence of both the plaintiff and the defendant. All the facts hereinafter agreed to, together with all Exhibits hereto attached, are agreed to be relevant and material to the issues, as joined by the pleadings, and shall be thereunder admissible.

"It is agreed between the parties to this cause that the plaintiff, Ware Lodge No. 435, Ancient, Free and Accepted Masons, of Alexander City, Alabama, is a duly and regularly constituted and chartered Subordinate Lodge of the Most Worshipful Grand Lodge of Free and Accepted Masons of the State of Alabama; that the plaintiff is a body politic and corporate, possessing all the powers, rights, privileges and immunities specifically given to subordinate lodges of the Grand Lodge by the Legislative charter granted to the Most Worshipful Grand Lodge of Free and Accepted Masons of the State of Alabama, being an Act of the Legislature of Alabama, approved December 9, 1859, entitled, 'An Act to incorporate the Grand Lodge of Free and Accepted Masons of the State of Alabama, and the Subordinate Lodges

under its jurisdiction;' and an Act amendatory thereof, approved March 17, 1875, entitled, 'An Act to amend sections one (1), two (2) and five (5) of an act entitled, an act to incorporate the Grand Lodge of Free and Accepted Masons of the State of Alabama, and the Subordinate Lodges under its jurisdiction, approved December 9, 1859'. Copies of said Acts are hereto attached, for the convenience of the Court, and marked respectively Exhibits 'A' and 'B'.

"That the plaintiff owns a certain lot in the City of Alexander City, Alabama, upon which is located a three story building. The entire third story of this building is used by the plaintiff for a Lodge Hall, ante rooms and paraphernalia storage rooms only. This third floor is used by the plaintiff for no commercial purposes, is not now and never has been rented out, and is non revenue producing. The second story of said building is divided into offices, and these the plaintiff regularly rents to various persons and receives revenue therefrom. These second story offices are presently rented out and are income producing. The plaintiff has rented out these second floor offices continuously and received the rents therefrom for many years prior to 1931, and during the years of 1931, 1932, 1933, 1934, 1935 and 1936 rented out the entire second floor and received a money rental therefrom. The first floor of the building is presently rented to the Federal Government for use as a United States Postoffice and to the Alexander City Chamber of Commerce for its offices, and the plaintiff receives a money rental from each of said tenants and received such rental during the years of 1931, 1932, 1933, 1934, 1935 and 1936, and for mnay years prior thereto. The building was erected about the year of 1910, and the 1st and 2nd stories thereof have continuously, since its erection, been rented out by the plaintiff on a commercial and revenue producing basis. All revenue received by the plaintiff for the rent of the first and second stories of its building is covered into the treasury of the plaintiff, and is thereafter used, after the overhead expenses of the plaintiff have been paid (including the maintenance and repair of the three stories of said building) for charitable purposes only.

"* * * It is further agreed that all the personal and real property owned by the plaintiff does not exceed in value the sum of $200,000.00. * * *

"No part of the said sum of $639.97, paid by the plaintiff to the Tax Collector, as aforesaid, has been repaid. And the Tax Collector, though requested, has declined to return said money."

The Act of 1859 [Acts of Alabama 1859–60, p. 458], amendatory of the Act of June 16, 1821, p. 22, incorporating the Most Worshipful Grand Lodge of Free and Accepted Masons of Alabama, contains among other things, the following provisions:

"Sec. 2. *Be it further enacted,* That said Grand Lodge shall have power to collect its revenue and to apply the same according to the ancient customs of the order, or may loan out the same for the purpose of aiding in benevolent enterprises, or for the purpose of accumulation: *Provided,* That the funds in money or choses in action shall not exceed in available assets the sum of fifty thousand dollars at any one time, and shall not be loaned upon usurious interest, nor shall the funds or accretions thereof be used otherwise than for the payment of the expenses of said Grand Lodge and for charitable purposes, and being thus set apart, *the same shall not be liable to taxation.* [Last italics supplied.]

"Sec. 3. *Be it further enacted,* That all contracts made or obligations assumed heretofore, which are not inconsistent with the laws of the land by said Grand Lodge under the former act of incorporation of said Grand Lodge, passed June 16th, 1821, or acts amendatory thereof be, and the same are hereby made valid and binding upon said Grand Lodge as organized under this charter, and that the acceptance of this charter by a resolution of said Grand Lodge, shall be all that is required to complete its organization under the same."

The provisions of the Act of 1875, amendatory of the Act of 1859 [Acts of Alabama 1874–75], here pertinent are found on pages 158, 159, 160 and 161 of said act, and are as follows:

"Section 1. *Be it enacted by the General Assembly of Alabama,* That * * * and may *acquire, purchase,* hold and enjoy *real estate not to exceed ten acres in quantity and two hundred thousand dollars in value* for carrying on and conducting its business, may rent out any store, rooms or offices in the lower stories of the buildings which may have been erected on such real estate, or which the said grand lodge may erect thereon, and collect the rent, and for the purpose of purchasing such real estate and buildings, the said grand lodge shall have

power to borrow money, issue its bonds therefor and execute a mortgage on any property it may own to secure the same, and may hold or loan out any money derived from the renting of its store rooms and offices or otherwise, as the said grand lodge may desire, subject to the regulations hereinafter prescribed.

"Sec. 2. Be it further enacted, That said grand lodge shall have power to collect its revenue and apply the same according to the ancient customs of the order, or may loan out the same for the purpose of aiding in benevolent enterprises or for the purpose of accumulation; Provided, that the money of said grand lodge shall not be loaned upon usurious interest, nor shall the funds or accretions thereof be used otherwise than for the payment of the expenses of said grand lodge and for charitable purposes, and being thus set apart the same *shall not be liable to taxation.*

"Sec. 5. Be it further enacted, That the said grand lodge, and each subordinate lodge under its jurisdiction, *shall have, respectively,* power to receive by gift, grant, contract, devise or donation by will, or otherwise, *any personal or real estate, not exceeding in value the sum of two hundred thousand* dollars as the *maximum* of their *assets, respectively,* and shall have power to sell, alien or dispose of the same, and that no such gift, grant, contract, or devise, or donation by will, subscription, or otherwise, shall fail by reason of any misconception in the name of such corporation, and that all contracts or agreements which may have been lawfully entered into by said subordinate lodges under their organization heretofore shall be binding upon them in their several corporate capacities under this act, and that the same may be enforced by them respectively, *and the property and effects owned by them being dedicated to charitable purposes only shall be exempt from taxation.*" (Approved March 17, 1874-75.) [Italics supplied.]

The Constitution of 1868 contained no provision similar to that of Section 10 of article 14 of the Constitution of 1875, reserving to the Legislature the power to alter, revoke, or amend any charter of incorporation "now existing, and *revocable* at the ratification of this constitution."

The Constitution of 1875 was ratified and effective on and after December 6, 1875, and this statement of the organic law thereafter rendered nugatory, in this jurisdiction, the rule declared in the case of Dart-

mouth College **v.** Woodward, infra, as to existing charters subject to revocation at the time of the adoption of the Constitution of 1875. Constitution of 1875 art. 14, § 10; Journals of the Constitution of 1875—White v. White, 230 Ala. 641, 645, 162 So. 368; South & N. A. R. Co. et al. v. Gray, 160 Ala. 497, 49 So. 347. No subsequent amendment of the charter of appellant is made or shown.

The Federal Constitution prohibits any State from passing any law impairing the obligations of contracts. Article 1, Section 10, Constitution of the United States, U.S.C. A.Const. art. 1, § 10. To like effect are provisions in the several State Constitutions. Article 1, § 19, Constitutions of 1819 and 1861; Article 1, § 24, Constitutions of 1865 and 1868; Article 1, § 23, Constitution of 1875.

█ We have indicated that appellants' charter was granted by the Legislature on December 9, 1859, and amended March 17, 1875, expressly exempting the property and effects of such eleemosynary corporation from taxation. It organized, functioned, acquired property and contracted within such charter powers. The State Constitutions of 1819 and 1868 did not engraft upon Acts chartering corporations the liability to any alteration or revocation. Constitution of Alabama, 1819 and 1868.

█ In State of Alabama **v.** Alabama Bible Society, 134 Ala. 632, 32 So. 1011, it was declared that a corporate charter is a contract within the meaning of the clause of the Federal Constitution which prohibits the impairment of the obligations of contracts by the state, and is not subject to alteration or revocation without the consent of the corporation. This decision by our Court is rested upon the decision in the case of Dartmouth College v. Woodward, 4 Wheat. 518, 4 L.Ed. 629.

█ It was declared in Minot v. Philadelphia, etc., R. Co., 18 Wall. 206, 21 L.Ed. 888, that an exemption from taxation contained in the charter of a corporation is a part of the contract between such body corporate and the state, and is inviolate to like extent as its other contract obligations. Pacific R. Co. v. Maguire, 20 Wall. 36, 22 L.Ed. 282.

██ The rule of the common law became that of the Territory of Alabama and of her admission into the Union. Pollard, Lessee, v. Hagan et al., 44 U.S. 212, 3 How.

212, 11 L.Ed. 565; 4 Alabama Digest, Common Law, 651, ⊛ 1–17. And in respect to the question for decision, the rule of the common law is that if any of the charter powers of corporations are ambiguous as to exemption, the general rule that exemptions from taxation are construed in favor of the taxing power is not applied, where the exemption is granted by virtue of a contract arising from and contained in corporate charters. In such a case the ancient maxim is to be applied—

"Quaelibet concessio domini regis capi debet stricte contra dominum regem, quando potest intelligi duabus viis.—Leon 243. Every grant of our lord the king ought to be taken strictly against our lord the king, when it can be understood in two ways." Black's Law Dictionary, p. 972.

In Northwestern University v. John J. Hanberg, County Treasurer, 237 Ill. 185, 86 N.E. 734, the foregoing rule was applied, and Mr. Justice Dunn, speaking of that university's charter, and its properties whenever acquired thereunder, said that (page 735):

" * * * This amendment was a contract between the state and the university whose obligation could not be impaired by subsequent legislation imposing taxes upon the property of the corporation was decided by the Supreme Court of the United States in the case of Northwestern University v. People, 99 U.S. 309, 25 L.Ed. 387, reversing the decision of this court in the same case. 80 Ill. 333, 22 Am.Rep. 187. Many years later the board of assessors of Cook county assessed certain real estate of the university for taxation, and it was sought to sustain the assessment on the ground that, the real estate having been acquired prior to the passage of the amendment to the charter, the exemption therein granted did not apply to it. This contention was overruled, and it was decided that the amendment clearly exempted from taxation all the property of the corporation acquired prior to the amendment. In re Northwestern University, 206 Ill. 64, 69 N.E. 75.

"The property involved in this case was acquired in March, 1905, and the position is now taken by the appellant that the amendment does not apply to any property acquired by the corporation after the amendment. Applying the well-known rule of construction in claims for exemption from taxation that a doubt is fatal to the claim and that the exemption cannot exist by implication only, but must be plainly and unmistakably granted, counsel argue that the amendment is reasonably capable of two constructions, the one restricting the exemption to the property owned by the corporation when the amendment was adopted, the other extending it to all property owned by the corporation at any time, and that the more restricted meaning must be adopted. But the rule of strict construction in favor of the state, just referred to, does not relieve the court of the duty of interpreting the exemption by the ordinary rules of construction and carrying out the intention of the Legislature if it can be ascertained. * * *"

The question recurs, Is there a contract existing between the Masonic Lodges and the State by virtue of the Acts of 1859 and 1875?

The question of whether a legislative charter constitutes a contract was early considered by the United States Supreme Court in Trustees of Dartmouth College v. Woodward, 4 Wheat. 518, 4 L.Ed. 629. An action of trover was brought by the Trustees of Dartmouth College against one Woodward, to recover the books, corporate seal and other corprate property to which the plaintiffs alleged themselves to be entitled. The title of the plaintiffs originated in a Crown Charter from the British Government, granted in the year 1769. The defendant claimed title to the corporate property under certain Acts of the Legislature of New Hampshire passed in 1816. The question involved was whether or not the New Hampshire Legislature could alter the provisions of the original Crown Charter without violating the provisions of Section 10, Article 1, of the Constitution. If the Crown Charter constituted a contract between the corporation and the Crown, then it could not be altered by subsequent Acts of the Legislature, without the consent of the corporation.

Chief Justice Marshall in his opinion held (page 629):

"The charter granted by the British crown to the trustees of Dartmouth College, in New Hampshire, in the year 1769, is a contract within the meaning of that clause of the constitution of the United States, (art. 1, s. 10) which declares that no state shall make any law impairing the obligation of contracts. The charter was not dissolved by the revolution.

"An act of the State legislature of New Hampshire, altering the charter, without

the consent of the corporation, in a material respect, is an act impairing the obligation of the charter, and is unconstitutional and void."

The pertinent part of Chief Justice Marshall's opinion is as follows:

"The general correctness of these observations cannot be controverted. That the framers of the constitution did not intend to restrain the States in the regulation of their civil institutions, adopted for internal government, and that the instrument they have given us, is not to be so construed, may be admitted. The provision of the constitution never has been understood to embrace other contracts, than those which respect property, or some object of value, and confer rights which may be asserted in a court of justice. * * *

"This is plainly a contract to which the donors, the trustees, and the crown (to whose rights and obligations New Hampshire succeeds), were the original parties. It is a contract made on a valuable consideration. It is a contract for the security and disposition of property. It is a contract, on the faith of which, real and personal estate has been conveyed to the corporation. It is then a contract within the letter of the constitution, and within its spirit also. * * *

"The opinion of the Court, after mature deliberation, is, that this is a contract, the obligation of which cannot be impaired, without violating the constitution of the United States. This opinion appears to us to be equally supported by reason, and by the former decisions of this Court."

This precise question was considered by the Supreme Court in the case of State v. Alabama Bible Society, 134 Ala. 632, 32 So. 1011, and in which Mr. Justice Sharpe declared:

"The constitution of 1819, unlike the constitutions of 1868, 1875, and 1901, respectively, did not ingraft on acts chartering private corporations liability to alteration and revocation by the legislature for the public good. The grant of appellee's charter and its acceptance was unqualified, and effected a contract between the state and the appellee, such as came within the meaning of that part of section 10, art. 1, of the federal constitution which prohibits the state to pass any law impairing the obligation of contracts. The doctrine so controlling is too well established and familiar to require an extended citation of authorities here. See the leading case of

Dartmouth College v. Woodward, 4 Wheat. 518, 4 L.Ed. 629; also The Binghamton Bridge, 3 Wall. 51, 18 L.Ed. 137; Home of the Friendless v. Rouse, 8 Wall. [430] 431, 19 L.Ed. 495; St. Anna's Asylum v. New Orleans, 105 U.S. 362, 26 L.Ed. 1128; Daughdrill v. Trust Co., 31 Ala. 91; Tuskaloosa, etc., Ass'n v. Green, 48 Ala. 346; Alabama & Fla. R. Co. v. Burkett, 46 Ala. 569.

"In Cooley's Constitutional Limitations it is well said of charters of private corporations generally that they 'are held to be contracts between the legislature and the corporators, having for their consideration the liabilities and duties which the corporators assume by accepting them; and the grant of the franchise can no more be resumed by the legislature, or its benefits diminished or impaired without the consent of the grantees, than any other grant of property or valuable thing, unless the right to do so is reserved in the charter itself.' This quotation was used approvingly in Mayor, etc., v. Ins. Co., 53 Ala. 570."

The Bible Society relied upon its act of incorporation of 1854 [Acts of Alabama 1853–54, p. 317], which contained provisions for its property to be exempt from taxation. It was conceded that the exempting clause of its charter was not obnoxious to the Constitution of 1819, in force and effect when the charter was granted. It was contended by the state that *later constitutional* provisions limited exemptions from taxes to property classified by uses different from the uses made of the Bible Society's property, or that the exemption was repealed by later legislative enactment. In this case, however, the Court adhered to the well-recognized decision of the United States Supreme Court in Dartmouth College v. Woodward, supra, as we have indicated. The Bible Society Case is cited with approval in Brattleboro Retreat v. Town of Brattleboro, 106 Vt. 228, 173 A. 209, 214, where the court said:

"* * * the case falls within the well-established rule that where not forbidden by the Constitution or law of the state, any stipulation in the charter of a corporation, not subject to alteration or repeal, respecting the rate of taxation, providing for a commutation, or for an entire exemption of the corporate property, which have been accepted and acted upon by the corporation, will be considered as an inviolable contract under the Federal Constitution.

Cooley's Const. Limitations (8th Ed.) vol. 1, pp. 248, 265; State of Alabama v. Alabama Bible Society, 134 Ala. 632, 32 So. 1011; St. Anna's Asylum v. New Orleans, 105 U.S. 362, 26 L.Ed. 1128; Thomp. on Corp. (3d Ed.) vol. 7, par. 5939, and many cases cited. It cannot be revoked or altered by a subsequent statute or even by an amendment to the State Constitution without the assent of the corporation. Thomp. on Corp., supra, and cases cited. Although this law has been vigorously assailed (see dissenting opinions in Piqua Branch of State Bank of Ohio v. Knoop, supra [16 How. 369, 14 L.Ed. 977], and Washington University v. Rouse, 8 Wall. [439] 441. 19 L.Ed. 498), it has withstood the storms for more than a century. In Piqua Branch of State Bank of Ohio v. Knoop, supra, at page 382 of 16 How., 14 L.Ed. 977, Mr. Justice McLean recognized the moral obligation imposed by such contracts in the following language: 'Until a State is lost to all sense of justice and propriety, she will scrupulously abide by her contracts more scrupulously than she will exact their fulfilment by the opposite contracting party."

In the case of State et al. v. Church of the Advent, 208 Ala. 632, 633, 95 So. 3, Mr. Justice Gardner correctly observes for the Court (page 4):

"It was therefore held in this state that exclusive use, irrespective of ownership, was, under this provision of the Constitution, the test of the right of exemption. Under such construction therefore, the question of ownership becomes immaterial, but the matter of exemption is rested upon the use to which the property is put. The rent of the property here in question is but an incident to ownership, and it must necessarily follow as a logical conclusion that if the ownership is immaterial, the disposition of the rent, which is an incident to the ownership, is likewise of no consequence in construing this provision of our Constitution. * * *

"The Legislature of 1919 (Acts 1919, p. 282) in order that there may be no misunderstanding, added a proviso to such exemption to the effect that any property owned by any educational or charitable institution let for rent or hire or used for business purposes shall not be exempt from taxation, notwithstanding its income may be used exclusively for educational, religious, or charitable purposes. * * * "

■ The Church of the Advent Case is correctly decided upon its established facts. The church owned a residence which was not a rectory. It was rented and the proceeds therefrom were given over to the rector. The church purchased a rectory from the realty company and used the rents in payment of the purchase price thereof. Thus the question involved was whether or not the property owned by a religious body was exempt from taxation when not used exclusively for religious purposes. Hence the decision that not being so used, it was liable for taxation. It will be observed that in the Church of the Advent Case no question of contract between the church and state was involved, which is the question of prime importance here. The church was not operating under a charter granted by the Legislature containing specific exemptions from taxation under a constitution which warranted such corporate contract. Here the Legislature having granted the exemption from taxation in the original charter to the Masonic Lodge, such lodge possessed it, and under a constitution permitting such grant, the lodge possessed a vested right, which cannot be summarily taken away from it by a subsequent Legislature operating under constitutions with different limitations and terms. That is to say, the right of exemption, here the subject of litigation, being vested and of a contractual nature, is protected from impairment by state and Federal constitutions. Const.Ala.1901, § 22; Const.U.S. art. 1, § 10. Dartmouth College v. Woodward, supra; State v. Alabama Bible Society, supra.

The expression in State v. Alabama Bible Society, supra, that, "The constitution of .1819, unlike the constitutions of 1868, 1875, and 1901, respectively, did not ingraft on acts chartering private corporations liability to alteration and revocation by the legislature for the public good," is inaccurate, as to the Constitution of 1868. We find no such provision as Section 10, article 14, in the Constitution of 1875, and as Section 238 of the Constitution of 1901, in the Constitution of 1868. Randle v. Winona Coal Co., 206 Ala. 254, 89 So. 790.

In Randle v. Winona Coal Co., supra, the observation is made of the decision in Avondale Land Co. v. Shook, 170 Ala. 379, 54 So. 268, that it stated the rule established in the case of Dartmouth College v. Woodward, supra, as we have indicated. It is further observed that the general

power of amendment, alteration or repeal of corporate charters granted in the Constitution of 1901 to the Legislature is broader than that contained in the Constitution of 1875. The further observation is made in Avondale Land Co. v. Shook, supra, that the power to alter, revoke or amend charters of private corporations was reserved by the Constitution of 1875 of the State of Alabama; that the different states of the Union have protected themselves from the effect of Section 10 of article 1 of the Federal Constitution, as far as they thought necessary, by reserving in their constitutions certain powers of alteration, revocation and amendment of charters of private corporations thereafter to be organized under the general law, or by special acts of the Legislature, so that such reserved power would enter into and form a part of the charter contract.

The Court then said: "This was done in the Constitution of 1875 of this state. The power to amend, alter, or revoke the charter thus being made a part of the charter contract, the exercise of this power by the state in the manner and to the extent contemplated could not be considered as in violation of section 10 of article 1 of the Constitution of the United States." Avondale Land Co. v. Shook, 170 Ala. 379, 54 So. 268, 269.

In the dissenting opinion by the now Chief Justice, in the last cited case, he adverts to the right to control corporations resulting from the influence of the well known Dartmouth College Case, supra, and states that this state by Section 10, Article 14, Constitution of 1875, and by Section 238 of the Constitution of 1901, reserved the authority "to alter, revoke, or amend" charters granted under such Constitutions whenever the Legislature was of the opinion that it may be injurious to the citizens of the state and "provided the amendment, alteration, or revocation will work no injustice to the stockholders." Avondale Land Co. v. Shook, supra.

The history, purpose and effect of the foregoing Sections of the Constitutions of 1875 and 1901 are discussed in Town of New Decatur v. American Tel. & Tel. Co., 176 Ala. 492, 58, So. 613, Ann.Cas.1915A, 875, Bernstein et al. v. Kaplan et al., 150 Ala. 222, 43 So. 581, and in South & N. A. R. Co. et al. v. Gray, 160 Ala. 497, 49 So. 347. None of these cases have found or recited any such reservation of the power under the Constitution of 1868, and we have failed to find such reserved power in that document.

The nearest analogy we can find in the Constitution of 1868 is that of its Article 13, Section 4, reading as follows:

"The property of corporations now existing, or hereafter created, shall forever be subject to taxation, the same as property of individuals, except corporations for educational and charitable purposes."

However, this provision had not the effect of overruling the doctrine announced by the great Chief Justice in the Dartmouth College Case, supra.

When all of the provisions of the three charters of the Masons are considered [Act approved June 16, 1821 (Acts of 1820–24, p. 22), Act of December 9, 1859 (Acts of 1859–60, p. 458), and the Act of March 17, 1875 (Acts of 1874–75, p. 158)], it is clear that they are to the effect that the corporation was given the power to collect its revenues and apply the same according to "ancient customs of the order," or to "loan out the same for the purpose of aiding in benevolent enterprises. * * * and for charitable purposes." That is to say, it is an eleemosynary institution similar to that dealt with in the Dartmouth College Case, supra, and as that provided by the exemptions of the several charters granted by the Alabama Legislature to the "Most Worshipful Grand Lodge of Ancient Free Masons of Alabama and its Masonic Jurisdiction." The agreed statements of facts, as we construe the same, are to like effect.

It is said that the power to acquire property in the extent indicated and to exempt the same from taxation as indicated for charitable purposes is far reaching. We have only to say that this was a matter for legislative judgment and its effect is that the Grand Lodge and each subordinate lodge under its jurisdiction has the power to acquire any personal or real property not exceeding in value the sum of $200,000 as the maximum of their assets, respectively, and that this right was granted along with the charter to the Masons, as such, and to each subordinate lodge under their jurisdiction; and that the same may be enforced by them, respectively and the property and assets owned being dedicated to charitable purposes only, shall be exempt from taxation. Acts of Alabama 1874–75, pp. 160, 161, §§ 2 and 5.

It has been declared in other jurisdictions that Masonic Lodges, when classified as charitable institutions in state statutes, are recognized as such by the courts. Mayor, etc., of Savannah v. Solomon's Lodge, etc., 53 Ga. 93; Everett v. Carr, 59 Me. 325; Heiskell v. Chickasaw Lodge, 87 Tenn. 668, 11 S.W. 825, 4 L.R.A. 699. In Georgia (Massenburg v. Grand Lodge, etc., 81 Ga. 212, 7 S.E. 636); Indiana (City of Indianapolis v. Grand Master of State Grand Lodge, 25 Ind. 518); Louisiana (State v. Board of Assessors, 34 La. Ann. 574); Massachusetts (Masonic Education, etc., Trust v. Boston, 201 Mass. 320, 87 N.E. 602); Nebraska (Plattsmouth Lodge No. 6, etc., v. Cass County, 79 Neb. 463, 113 N.W. 167); Oregon (Hibernian Benev. Soc. v. Kelly, 28 Or. 173, 42 P. 3, 30 L.R.A. 167, 52 Am.St.Rep. 769), and Virginia (City of Petersburg v. Petersburg Benev. Mech. Ass'n, 78 Va. 431), it is considered that fraternal associations, such as Masons and Odd Fellows, are classed as charitable or benevolent institutions on account of their philanthropies, and entitled to hold their property exempt from taxation. The contrary doctrine is that the fact of their relief work being confined to members of the order and their families, they are removed from the class of such public charities, so that they are not entitled to exemption, under the rule of decisions in Illinois, Kentucky, Maine, Ohio, Pennsylvania and South Carolina. 37 Cyc. p. 931, "Taxation."

In this state at an early date, as we have indicated, the declared public policy exemplified in the three charters granted to the "Most Worshipful Grand Lodge of Ancient Free Masons of Alabama and its Masonic Jurisdiction", said order was recognized and classified as a charitable or benevolent institution, within the limits indicated as to area of real property and as to the value of personal properties indicated in the acts granting the charter, which expressly declared the said institution to be exempt from taxation.

█ It follows, therefore, that the judgment of the circuit court was rendered under a misconception of the issues involved, which was erroneous, and is reversed, and a judgment here entered for appellant for the sum of $639.97, together with six per cent legal interest from May 31, 1937.

Reversed and rendered.

All the Justices concur except BROWN, J., who dissents.

BROWN, Justice (dissenting).

Brushing aside the long discussion of constitutional interpretation, which I deem wholly irrelevant, and which can only tend to obscure the real issue in this case, the question presented is simply this:

Is there such conflict between the provisions of § 3022 of the Code of 1923, to wit:

"But property, real or personal, owned by any educational, religious or charitable institution, society or corporation, let for rent or hire or for use for business purposes, shall not be exempt from taxation, notwithstanding the income from such property shall be used exclusively for educational, religious or charitable purposes;" and the provisions of § 5 of Act, approved March 17, 1875, Acts 1874–75, p. 160, which provides "and the *property and effects owned by them being dedicated to charitable purposes only, shall be exempt from taxation*," as would justify the holding that the Legislature intended and attempted a repeal of said clause in the Act of 1875, by the adoption of the Code? [Italics supplied.]

Before treating the questions certain well settled principles of construction of statutes and constitutional provisions granting exemptions are here stated.

1. Exemptions from taxation must be strictly construed in favor of the taxing power. State v. Tuscaloosa Cotton Seed Oil Co., 208 Ala. 610, 95 So. 52; State v. Wright, 224 Ala. 357, 140 So. 584.

2. Statutes "creating * * * a total or partial exemption must be expressed in clear and unambiguous terms, and may not be deduced from language of doubtful import." Brown, Ins. Commissioner, v. Protective Life Insurance Company, 188 Ala. 166, 66 So. 47.

3. The presumption is against construing a statute as conferring irrepealable exemption from taxation. Mayor, etc., of City of Mobile v. Stein, 54 Ala. 23.

The facts are without dispute. The property taxed, the subject of the controversy in this case, belongs to subordinate lodge of Masons at Alexander City, and consists of a lot and a three story building, the third floor is used for lodge purposes, the first and second floors for commercial purposes, and the rents accruing therefrom

are used, after paying the expenses of the lodge for charitable purposes. The property was not owned by said lodge at the time of the enactment of the statute of March 17, 1875, but was acquired more than a half century after the enactment of said statute.

The pertinent provisions of the Act of 1875 are found in Section 5, the only section that refers to and deals with property of subordinate lodges. It provides that:

"The said grand lodge, and each subordinate lodge under its jurisdiction, shall have, respectively, power to receive by gift, grant, contract, devise or donation by will, or otherwise, any personal or real estate, not exceeding in value the sum of two hundred thousand dollars as the maximum of their assets, respectively, and shall have power to sell, alien or dispose of the same, and that no such gift, grant, contract, or devise, or donation by will, subscription, or otherwise, shall fail by reason of any misconception in the name of such corporation, and that all contracts or agreements which may have been lawfully entered into by said subordinate lodges under their organization heretofore shall be binding upon them in their several corporate capacities under this act, and that the same may be enforced by them respectively, *and the property and effects owned by them being dedicated to charitable purposes only shall be exempt from taxation.*" [Italics supplied]. Acts 1874–75, pp. 160, 161.

We are in the outset confronted with an ambiguous provision exempting property from taxation.

Its most natural interpretation is that it was intended to apply to property presently owned and presently dedicated, at the time of the enactment, to charitable purposes. If the well settled rule of construction, strictissimi juris, is applied, this is all it means. State v. Wright, supra.

This ambiguous provision can not be construed to mean that the property acquired fifty years later was, or is, as a matter of law, dedicated to charitable use.

If we ignore all the well settled rules of interpretation the most that said provision means is, that the property and effects, acquired and owned, if used *exclusively* for charitable purposes, shall be exempt from taxation. The use to which *the property is dedicated* at the time of the effort to assess the same is the criterion of the exemption. State et al. v. Church of the Advent, 208 Ala. 632, 95 So. 3; Anniston City Land Co. v. State, 160 Ala. 253, 48 So. 659; State Tax Commission of Alabama et al. v. Commercial Realty Company, a Corporation, post, p. 358, 182 So. 31.

Property rented and used for commercial purposes is not used *exclusively* for charitable purposes, though the rents are subsequently so used. State et al. v. Church of the Advent, supra.

If there is doubt, the doubt aided by the presumption against irrepealable exemptions should be resolved in favor of the state's taxing power. Mayor, etc., of City of Mobile v. Stein, supra.

So construed there is no conflict between the Act of 1875 and § 3022 of the Code, and all the camouflage raised about the Dartmouth College doctrine in discussion is irrelevant.

The Act of February 17, 1854, considered in State of Alabama v. Alabama Bible Society, 134 Ala. 632, 32 So. 1011, provided "that the property of the said 'Alabama Bible Society at Montgomery' shall be exempt from taxation," without regard to its use. That case is not pertinent.

For these reasons, I respectfully dissent.