The issue presented in this case is whether the Most Worshipful Grand Lodge of the Free and Accepted Masons ("the Grand Lodge") is exempt from the payment of taxes on property it owns and leases to commercial enterprises because the rental income was "dedicated to charitable purposes." The property at issue is located near the intersection of Zelda and Vaughn Roads in Montgomery, Alabama, and is known as the Hillwood Shopping Center. To decide the issue presented, we must construe the provisions of two legislative Acts — Act No. 317 of the 1859 Alabama Legislature, and Act No. 2 of the 1950 Alabama Legislature (amending Act No. 317). We shall collectively refer to Act No. 317 as amended by Act No. 2 as "the Act." The trial court, after examining the case law and the Act, concluded that "the Hillwood Shopping Center property is not 'dedicated to charitable purposes' as required by the Act." From our review of the Act, and the applicable case law, we conclude that the trial court was correct in its holding. We, therefore, affirm.
The facts are undisputed. In 1821, the Alabama Legislature incorporated the Grand Lodge under the name "Most Worshipful Grand Lodge of Ancient Free Masons of Alabama and its Masonic Jurisdiction." 1821 Ala. Acts 22-23. The 1821 Act gave the Grand Lodge the right to create subordinate lodges, to own and sell land not exceeding $20,000 in value, to sue and be sued in its corporate name, and to receive donations of real property, not exceeding $10,000 in value, and personal property, of any value, from individuals.
In 1859, the Alabama Legislature again incorporated the Grand Lodge, this time under the name "Most Worshipful Grand Lodge of Free and Accepted Masons of the State of Alabama." Act No. 317, 1859-60 Ala. Acts 458. The 1859 Act gave the Grand Lodge power to create subordinate lodges, to own real property (not exceeding 10 acres in area), to sue and be sued in its corporate name, to erect lodge offices and store rooms, to rent out the lower floors of *Page 998 
the lodge offices, to collect the rental proceeds from these lower floors and accumulate this money (not to exceed $50,000), and then to either lend this money or use it for charitable purposes. Id. The rental proceeds from these lower floors were declared tax exempt if they were used for charitable purposes. Id. Also, the 1859 Act incorporated the subordinate lodges and gave them the power to own real and personal property not exceeding $25,000. Id. at 459. Further, the 1859 Act exempted from taxation all real and personal property of the Grand Lodge and its subordinate lodges, not exceeding $25,000, if the property was "dedicated to charitable purposes only." Id. at 460.
In 1874, the Alabama Legislature amended the 1859 Act. Act No. 52, 1874-75 Ala. Acts 158. The only major change brought about by this amendment was to allow the Grand Lodge and its subordinate lodges to own and/or sell real and personal property not exceeding 10 acres in area or $200,000 in value. Id. at 160.
In 1950, the Alabama Legislature again amended the 1859 Act. Act No. 2, 1950 Ala. Acts 41. Here again, the only major change brought about by the amendment was to change the dollar amount and area limitations on land and personalty that the Grand Lodge and its subordinate lodges could own. Both the land area and the dollar value limitations were removed completely.
In the fall of 1990, W.V. Lyerly, the Montgomery County tax collector, sent escape tax notices to the Grand Lodge for the 1985 through 1989 tax years. The escape notices were sent for ad valorem taxes on a small, 10-store shopping center called the Hillwood Shopping Center. The Hillwood Shopping Center property is located across the road from the Grand Lodge's lodge building and the Alabama Masonic Home. It is undisputed that the Grand Lodge leases out the spaces in the Hillwood Shopping Center to commercial enterprises and uses the proceeds for charitable purposes in regard to the Alabama Masonic Home.
The Grand Lodge sued Lyerly; Marvin Driver, the Montgomery County tax assessor; and James Sizemore, the Alabama commissioner of revenue, seeking a declaration that the Hillwood Shopping Center was tax exempt property and seeking a permanent injunction against the collection of any taxes on the property. Lyerly, Driver, and Sizemore answered the complaint, denying that the Hillwood property was tax exempt. The Grand Lodge amended its complaint to request a stay of any levy, execution, or tax sale on the Hillwood property pending a determination of the lawsuit. The trial court granted the requested stay.
The case was submitted to the trial court on a stipulation of facts, trial briefs from counsel, and oral arguments. The court ruled that the Act did not exempt the Hillwood property from taxation. However, the court also held that the Act did exempt the Grand Lodge's lodge building and the Alabama Masonic Home from taxation. The Grand Lodge appeals.[1]
Initially, we note that because this case involves a strictly legal challenge, no presumption of correctness, or favorable initial view of the trial court's evidentiary findings, applies. H.C. Schmieding Produce Co. v. Cagle, 529 So.2d 243,247 (Ala. 1988). Rather, "we [must] review any rulings purely on matters of law without any presumption of correctness on the part of the trial court." Id., and see, Ricwil, Inc. v. S.L.Pappas Co., 599 So.2d 1126 (Ala. 1992).
Also, we note that neither party disputes the trial court's ruling as to the tax exempt status of the Grand Lodge's lodge building and the Alabama Masonic Home. Thus, the only issue before us is the propriety of the ruling on the tax status of the Hillwood Shopping Center property.
The 1950 Amendment to the Act reads:
"Be It Enacted by the Legislature of Alabama:
 "Section 1. Sections 1, 2 and 5 of Act No. 317, approved December 9, 1859, entitled *Page 999 
'An Act To Incorporate the Grand Lodge of Free and Accepted Masons of the State of Alabama and the subordinate Lodges under its jurisdiction,' as amended, are amended to read:
 "Section 1. R.H. Ervin, S.F. Hales, H.S. Shelton and J.A. Whitaker, and their successors in office, are hereby incorporated by the name of the Most Worshipful Grand Lodge of Free and Accepted Masons of the State of Alabama, and by that name shall have capacity to sue and be sued, plead and be impleaded, in any and all of the courts of this State, to contract and be contracted with, to have a common seal, and to alter the same at pleasure, and the said Grand Lodge, through its four principal officers, shall have perpetual succession, and may grant dispensations and charters to subordinate Lodges, to be subject to and under its masonic jurisdiction, and make, ordain and establish its constitution, bylaws, rules and regulations, not inconsistent with the constitution or laws of this State or of the United States, and may acquire, purchase, hold and enjoy so much real estate as may be necessary for the erection of proper buildings and offices for carrying on and conducting its business, may rent out any store rooms or offices in the lower stories of the buildings which may have been erected on such real estate, or which the said Grand Lodge may erect thereon, and collect the rent, and for the purpose of purchasing such real estate and buildings, the said Grand Lodge shall have power to borrow money, issue its bond therefor and execute a mortgage on any property it may own to secure the same, and may hold or loan out any money derived from the renting of its store rooms and offices or otherwise as the said Grand Lodge may desire, subject to the regulations hereinafter prescribed.
 "Section 2. That said Grand Lodge shall have the power to collect its revenue, and to apply the same according to the ancient customs of the Order, or may loan out the same for the purpose of aiding in benevolent enterprises, or for the purpose of accumulation; provided the funds in money or choses in action shall not be loaned upon usurious interest, nor shall the funds or accretions thereof be used otherwise than for the payment of the expenses of said Grand Lodge and for charitable purposes and being thus set apart, the same shall not be liable to taxation.
 "Section 5. The said Grand Lodge and each subordinate Lodge under its jurisdiction, shall have, respectively, power to receive by gift, grant, contract, devise or donation by will, or otherwise, any personal or real estate and shall have power to sell, alienate or dispose of the same, and no such gift, grant, contract or devise, or donation by will, subscription, or otherwise shall fail by reason of any misconception in the name of such corporation, and all contracts or agreements which may have been lawfully entered into by said subordinate Lodges under their organization heretofore shall be binding upon them respectively, and the property and effects owned by them, when dedicated to charitable purposes, shall be exempt from taxation."
Act No. 2, 1950 Ala. Acts 41-42 (Emphasis supplied).
In Ware Lodge No. 435, Ancient Free Accepted Masons v.Harper, 236 Ala. 334, 182 So. 59 (1938), this Court held that the 1859 Act and the 1874 Amendment created a contract between the State of Alabama and the Grand Lodge and its subordinate lodges that could not be altered or revoked, absent consent, without violation of Article I, § 10, of the United States Constitution. Article I, § 10, commonly called the "contracts clause," prohibits a State from passing a law that impairs the obligations of contracts. How this contract applies to the Hillwood Shopping Center property was the precise question before the trial court and is the precise question before us.
The contract created by the Act allows two exemptions from taxation: one contained in §§ 1 and 2, and the other contained in § 5. The tax exemption in §§ 1 and 2 applies only when the lower floors of the Grand Lodge, or subordinate lodges, are rented out to third parties and the *Page 1000 
proceeds used for charitable purposes. This was the exact exemption in dispute in Ware Lodge. See, Ware Lodge,236 Ala. at 337, 182 So. at 61.
The tax exemption clause in § 5 states "and the property and effects owned by them [the Grand Lodge and its subordinate lodges], when dedicated to charitable purposes, shall be exempt from taxation." We are called on, then, to interpret this phrase "when dedicated to charitable purposes." We find our case law interpreting Article IV, § 91 of the Alabama Constitution of 1901 to be instructive.
Section 91 reads:
 "The legislature shall not tax the property, real or personal, of the state, counties, or other municipal corporations, or cemeteries; nor lots in incorporated cities and towns, or within one mile of any city or town to the extent of one acre, nor lots one mile or more distant from such cities or towns to the extent of five acres, with the buildings thereon, when same are used exclusively
for religious worship, for schools, or for purposes purely charitable."
(Emphasis added.)
This Court has held consistently that the exclusive use of the property at issue for religious worship, schools, or charity is the true test of whether the exemption under § 91 applies. State v. Church of the Advent, 208 Ala. 632, 95 So. 3
(1923), State v. Bridges, 246 Ala. 486, 21 So.2d 316 (1945). Generally, who owns the property at issue is unimportant; how the property is used is determinative. Church of the Advent,208 Ala. at 634, 95 So. at 4.
However, the ownership of the property is important when the religious, educational, or charitable organization using the property does not also own the property. Crim v. Phipps,601 So.2d 474 (Ala. 1992).[2] When a property owner allows another party to use his property for religious, educational, or charitable purposes, and the owner derives no income or benefit
from the property, then the property is used exclusively for a religious, educational, or charitable use, and the property owner is entitled to a § 91 exemption. However, if the owner receives any income or benefit from the property, the property is not used exclusively for religious, educational, or charitable purposes, and the property owner is not entitled to a § 91 exemption. Id.
Further, the property must be exclusively used for religious worship, schooling, or charity, in the sense that the property must be used solely, only, or wholly for a religious, educational, or charitable purpose. Bridges, 246 Ala. at 49890, 21 So.2d at 319-20. No partial § 91 exemption is available. Id.
Here, it is undisputed that the Hillwood Shopping Center property is used for commercial enterprises. The Grand *Page 1001 
Lodge argues that because it takes the rental proceeds from the Hillwood Shopping Center property and uses them in the Alabama Masonic Home, admittedly a charitable institution, the Hillwood property should be exempt from taxation. This same argument was made and rejected in Church of the Advent.
In the Church of the Advent case, the Church of the Advent in Birmingham, Alabama, owned a large residential building that it leased to an elderly lady, who, in turn, used the building to run a boardinghouse business. The Church argued that because it used the rental proceeds for religious purposes, the property was tax exempt. This Court rejected the Church's argument, saying:
 "It was therefore held in this state that exclusive use, irrespective of ownership, was, under [Art IV, § 91, Ala. Const. of 1901], the test of the right to exemption. Under such construction therefore, the question of ownership becomes immaterial, but the matter of exemption is rested upon the use to which the property is put. The rent of the property here in question is but an incident to ownership, and it must necessarily follow as a logical conclusion that if the ownership is immaterial, the disposition of the rent, which is an incident to the ownership, is likewise of no consequence in construing this provision of our Constitution."
Church of the Advent, 208 Ala. at 634, 95 So. at 4.
We find Church of the Advent clearly in point and dispositive. The Act creates a contract, irrevocable without consent, between the Grand Lodge, and its subordinate lodges, and the State of Alabama. The Act grants two possible tax exemptions, the first of which (i.e., the exemption in §§ I and 2) is not applicable to this case. In fact, the Grand Lodge admits in its brief to this Court that the exemption in §§ 1 and 2 does not apply on these facts. See, Appellant's Brief at 10-11.
We hold that the second tax exemption, the "when dedicated to charitable purposes" exemption in § 5, applies only when the use to which the property is put is exclusively charitable. Here, the Hillwood Shopping Center property was not used exclusively for charitable purposes; therefore, the § 5 tax exemption was not available to the Grand Lodge. The trial court, therefore, was correct in its holding. We affirm.
AFFIRMED.
HORNSBY, C.J., and ALMON, SHORES, ADAMS, HOUSTON, STEAGALL and KENNEDY, JJ., concur.
[1] While this case was pending, Lyerly died. Sarah Norred, his successor in office, has been substituted. See Rule 43(b), Ala.R.App.P., and Rule 25(d), Ala.R.Civ.P.
[2] In Crim v. Phipps, this Court held that a property owner who leased to the Department of Human Resources an office building and parking lot, admittedly used for charitable purposes, was not entitled to a tax exemption under § 91. This Court determined that when use and ownership are split, the owner must show that he derives no income or personal benefit from the property in order to meet the "exclusive use" test. We quoted State ex rel. Hammer v. MacGurn, 187 Mo. 238, 242-43,86 S.W. 138, 139 (1905), with approval, as follows:
 "So, if the private owner of the land allows his land to be used for [religious, educational, or charitable] purposes, and charges no rent and derives no personal benefit from the land, the land is exempt from taxation, because the land is then devoted exclusively to [religious, educational, or charitable] uses. . . . For in such case the owner contributes the use of his land to a public or quasi-public use, . . . and derives no gain or profit for himself, and, therefore, the State does not exact a tax from his land with one hand while accepting a contribution of the use of his land with the other hand.
 "But on the contrary, when the owner leases his land to the public for a public use, or to a quasi-public body for a charitable or religious use, and applies the rents derived from the land to his own personal advantage, he contributes nothing to the public or to charity, he loses nothing by the use, he is not a benefactor to any one, but he stands before the law in exactly the same light as any one else who leases his land for any other purpose, and uses the rents for his own advantage, and, therefore, he is not entitled to any special consideration at the hands of the law or the government, and his property is not exempt.